A. H. WHITE, GUARDIAN, v. MARY AND WESLEY SHEPPERD.

Where the executor failed to insert certain real estate in the inventory, and, being cited to show cause, claimed the property as his own, and the County Court decreed that the property belonged to the estate, and should be administered as such, from which there was no appeal, in a suit by the heirs of the intestate against the heirs of the executor, since deceased, to recover the land, it was held that the decree of the County Court did not conclude the title to the land. But if it were admitted, &c.

Where certain land, claimed by the executor as his own, was decreed by the County Court to belong to the estate and ordered to be inventoried and administered accordingly, from which there was no appeal, and the executor died shortly afterwards, and within three months the heirs (minors) of the first intestate sued the heirs of the executor to recover the land, not claiming under the decree of the County Court, but under the deed to their ancestor, but after two trials in the District and Supreme Court, and after five years and seven months, pleaded said decree, it was held, that to allow the plaintiffs the benefit of the decree, under the circumstances, when it would be too late to have it reviewed by certiorari, would operate surprise and injustice to the defendants.

In order to claim the benefit of an offer of compromise, it must be shown that it was accepted without condition.

The restriction of the power of the husband, over the homestead, does not apply where it is charged with preceding equities or incumbrances. These must be discharged, and they have precedence over the rights of the homestead privilege ; and the right of the husband to make arrangements in relation to these incumbrances, or to renounce lands thus burthened or subject to conditions and contingencies, could not be questioned by the wife, in virtue of her remote right which might arise if the incumbrances or conditions were ever discharged or removed, unless in cases where the husband is squandering the property, with the fraudulent design of depriving his wife of a homestead.

Quere ? as to the testamentary power of the husband over his homestead, without the consent of the wife.

Error from Montgomery. Tried before the Hon. Peter W. Gray.

*N. H. Davis,* for plaintiff in error, cited Lynch v. Baxter, 4 Tex. R. 431 ; Toliver v. Hubbell, 6 Id. 116.

*Yoakum & Branch,* for appellees, cited same case in 10 Tex. R. 72, and 11 Id. 346.

HEMPHILL, CH. J. This cause has been twice before the Court. (10 Tex. R. 72 ; 11 Id. 346.) The facts, pleadings, and proceedings in the case, were stated with sufficient fulness in the Report, Vol. 11th, p. 347, and need not be here recited.

The suit was for the recovery of a tract of land in possession of defendants, and this was claimed by plaintiffs in their original petition, filed 1st August, 1849, under a deed of conveyance from Joseph Lindley to W. W. Shepperd, Jr., deceased, the father of the wards of the plaintiff, White, and the husband of Phebe, the co-plaintiff. The main question in the cause was, whether the purchaser from Lindley was by and for W. W. Shepperd, Sr., through whom the defendants claimed, and who was the father of W. W. Shepperd, Jr., on the ground that the former had paid the purchase money, and held under a resulting trust, the plaintiffs insisting that even if such payment was made, it was by way of advancement to the son, and not in trust for the father.

After the cause was remanded, the second time, from this Court to the Court below, and after five years and several months from the commencement of the action, the plaintiffs (the minors) amended their petition by averring that they had acquired all the right, title and interest of their grand father, W. W. Shepperd, Sr., in his life time, and after the death of their father, W. W. Shepperd, Jr., as appeared by an exhibit from the County Court, and that the County Court, in a certain proceeding against Wm. W. Shepperd, Sr., while acting as executor of W. W. Shepperd, Jr., had adjudged the land to be the property of the estate of the said Junior, and ordered it to be inventoried as such, which judgment was in full force, unreversed or otherwise vacated.

White v. Shepperd.

The proceedings by the County Court were had on a petition filed by the plaintiff in this suit, as guardian of the minor heirs of W. W. Shepperd, Jr., praying for a ·more perfect inventory of the estate, and that the father, as executor of his son, be required to inventory the said land as a part of the property of the estate. The executor, viz : W. W. Shepperd, Sr., responded that the land was purchased by himself, that he had paid the whole of the purchase money—a portion during the life of the son, and the balance since his death—that he had always had possession and ownership since the purchase, and did not include the land in the inventory because it was his own and not his son's land ; and that the deed was made to him in the name of his son to gratify him, and for the purpose of enabling him to call himself a freeholder, without the remotest idea of an advancement to the son. After reciting the matters relative to a negro claimed for the estate, his intention to provide handsomely for the plaintiffs, (being his grand children,) he closes by stating that the tract of land was worth eight hundred dollars, and that he was willing the children of his son should have it, in lieu of so much out of his estate, but thinks it would bᵃ better for them to take other property, and refers it to the guardian to select which they would prefer. The plaintiff, by way of replication, denied that the lands had been purchased by the funds of the father, or, if they were, that the father had, in the life time of the son, used a much larger amount of his money and property, and since his death he, as executor, had effects in his hands which should have been applied, in his trust capacity, to such payment ; that the deed was taken in the son's name and for his own use and benefit, &c., and he further replied, that he did not admit that the land or the purchase money was or should be considered an advance to be brought into Hotchpot, yet, under any and all state of the case, did elect to have the land and the rents and fruits thereof, without waiting to pen negotiations for other property ; that since the death of

White v. Shepperd.

defendant's son he has evicted the widow and children of decedent, and prays that the land be inventoried as part of the estate, postponing the question as to the manner of payment and inducement to purchase.

The County Court, on the 30th April, 1849, decreed that from the pleadings and admissions, it appeared that the land and negro mentioned, were the property of the estate of W. W. Shepperd, Jr., and subject to administration, and the same were inventoried and adjudged to be treated and preserved by the executor as such.

The verdict and judgment below were for defendants, and the plaintiffs, on appeal, have assigned various errors, the most important points in which will be considered.

The plaintiffs, in argument, insist on the judgment of the County Court, ordering the land to be placed on the inventory, as conclusive in their behalf. On this point the Court charged to the effect, that the record of the proceedings of the Probate Court, between the plaintiffs and Wm. W. Shepperd, deceased, as executor of the younger Shepperd, does not exclusively establish the right of property or title to the land as belonging to W. W. Shepperd, Jr., but only that it should properly be inventoried by the executor as part of the estate, but the statements made by the parties in their pleadings are evidence as admissions against each of them, to be taken all together and in connection with the other evidence in the cause.

This charge is objected to as vague and uncertain, calculated to mislead the jury, and contrary to law. But the objection does not appear to be well taken. An executor or administrator is required to return under oath a full and complete inventory of the estate ; (Hart. Dig. Art. 1148,) and on complaint of any person interested in the estate, he shall be cited, and on good and sufficient proof being made, that any property or claims of the estate have not been included in the inventory, he shall be required to make and return an addi-

tional inventory and list thereof, in like manner as original inventories and lists. (Id. Art. 1150.) And these inventories and appraisements may be given in evidence in any suit by and against the executor or administrator, but shall not be conclusive for or against him, if it be shown that there is other property, not inventoried; or that there are other claims than those named in the lists, or that the property or any part thereof was *bona fide* sold for more or less than the appraisement, or was not separate or common property, as specified in the inventory. (Id. Art. 1151.)

It appears that by the statute, the inventory is not intended to be conclusive, and no distinction is made between an inventory voluntarily made, and one returned under the judgment of the Court, as to its effect in evidence. Neither the one nor the other is conclusive. And though certain particulars are enumerated, in which it is declared an inventory shall not be conclusive, yet that is not to be construed an affirmance of conclusiveness in other particulars. An inventory is for the benefit as well of the administrator as of persons interested in the succession. Under an inventory, the former cannot be made liable beyond the amount of assets received, and the latter have some certain information of the extent of property subject to their claims. But neither could, without injustice, be absolutely bound by the showing of the inventory. The creditor or heir may prove that there is additional property belonging to the estate; and surely an administrator may show that property inserted in the inventory does not belong to the succession, and that, on satisfactory proof, he has surrendered it to the lawful owner. And whether the disputed property be inserted in the inventory voluntarily, or under decree of the County Court, would make no difference. If a stranger be the owner, he would not be cited, and the decree of the Court could not, of course, affect his rights; and if the executor claim the property in his individual capacity, it would savor of discrimination, to make the decree for in-

ventory binding on him, when it would have no effect on a third party. The executor or administrator, in his individual capacity, is a stranger to the estate. We are of opinion that there was no error in holding that the decree of the County Court did not conclusively establish that the title to the land was in the estate of the younger Shepperd.

But if it were admitted that ordinarily a decree of the County Court ordering property to inventory, would be conclusive against the private right of the executor or administrator, if not reversed on appeal, yet, under the circumstances, no such operation could be allowed this decree. Shortly after the judgment, the executor departed this life. Three months from the judgment, this suit was instituted against his wife and son, and in this the plaintiffs did not claim through the decree of the County Court, but under the deed from Lindley to the younger Shepperd ; and though a most obstinate litigation followed, with two trials in the District and Supreme Courts, yet not until the lapse of five years and seven months, was this judgment for inventory invoked to support the pretensions of the plaintiffs. This course was equivalent to an abandonment of their rights under the judgment of the County Court, if any they had. They did not rely upon any of these rights. They virtually waived them ; and the defendants, from the course of the litigation, could not have imagined that they would ever be claimed, or that there was any necessity for bringing up the judgment by *certiorari* to the District Court. This might have been done at any time within two years, and no doubt would have been attempted, had the course of the plaintiffs not shown a virtual abandonment of the suit and judgment, and a determination to have the rights re-tried and settled in another and distinct tribunal.— To allow the plaintiffs the benefit of the judgment, under the circumstances, when it would be too late to have it reviewed by *certiorari*, would operate surprise and injustice to the defendants ; and, under this view, there was no error in the

instruction virtually, that the proceeding was not conclusive against the defendants.

The land in controversy was purchased from Lindley, and the deed was in the name of the younger Shepperd, and the evidence that the equitable title was in the elder Shepperd, consisted of a declaration by the younger Shepperd, in an instrument intended for his will, to the following effect : " The " place I now reside on is in my own name, and it being paid " for by my father, all but the last payment, my father, W. W. " Shepperd, Senr., has agreed to pay the last payment, above " mentioned, for said land, and then the said land above men- " tioned shall become the property of Wm. W. Shepperd, " Senr., and he shall apply to the Probate Court to have the " deed of said land recorded in his own name, to him and to " his heirs, to have and to hold in every sense of the word and " law, as if I had sold it to him, and made a *bona fide* deed ; " and then said W. W. Shepperd shall pay to my heirs, Phoebe " C. Shepperd, or guardian, for the use of her and the educa- " tion of my body heir or heirs, as before directed and de- " scribed, one third of the amount of money paid originally for " the above described land."

This was held by this Court to be conclusive evidence, at least that two thirds of the purchase money was paid by the father, according to the terms of the original purchase, and that that payment was in trust for himself and not for advance- ment to the son ; consequently the father was entitled in equi- ty to two thirds of the land.　The plaintiffs attempted to re- but the effect of these admissions of the son, acknowledging a trust for the father, by the testimony of two of the subscribing witnesses to the will of W. W. Shepperd, Jr.　P. H. Fullen- wider testified that the will of the younger Shepperd, about the father having the land, was recited in presence of the elder Shepperd, before the will was written.　Thomas W. Hay, an- other of the subscribing witnesses, testified the same, and that he wrote the will at the instance and under the direction of

the testator by his sick bed side ; that before commencing the writing of the will, the son had the father called into the room, and then and there recited to the father thus : That the land had been bought by the father, and what had been paid was paid by the father ; that he, the son, and the father, with their families, were to live on the land as long as the father and mother lived, and at their deaths the land was to be the son's, and he was to pay to two of his brothers, Wesley and Carter, two thirds of the purchase.   But as the son was going to die and had not paid one cent for the land, he wanted the father to have the land and pay his widow and heirs one-third of the original purchase money, and pay the last payment.— The father assented to the statements of the son, and agreed to his proposition, and that the statement then was written in said will.

In relation to this evidence, the Court, after having explained the effect of the declaration by the son in his will, instructed the jury to decide on all the facts in testimony before them, and if they believed from the evidence, that the land was bought by the elder Shepperd, and the purchase money paid by him, and the deed taken in the name of the son, with the understanding that it was for the father's benefit, they should find for the defendants, otherwise for the plaintiffs ; and at the request of the plaintiffs, he further charged, that if there had been positive evidence, and the jury believe it to be true, that at the time of the purchase, it was agreed between the father and son, that the son, in whose name it was bought, should own the land by paying to two of his brothers two thirds of the purchase money, then it was not a resulting trust.

These instructions are certainly most favorable to the plaintiffs.   The jury are charged to find on all the evidence, written as well as parol ; and on the contingency that certain evidence was introduced and they believed it, they were to find there was no resulting trust for the elder Shepperd.

Without commenting on the superior force of the written

White v. Shepperd.

declaration of the son over the parol evidence of the witness, and especially after the lapse of eight or nine years, and giving the testimony its due weight, it does not, at least conclusively, rebut the presumption of trust in the son, or real ownership in the father. It shows clearly, that the son could not claim according to the terms of the deed ; that this does not express the intention of the parties to the contract ; that the father purchased the land, and paid for it as far as payments were made, and that an advancement to the son, in the ordinary sense of that term, was not intended ; that the advancement was only an estate in reversion after the termination of the life estate of the father and mother, charged with the precedent condition of paying two thirds of the purchase money to two of his brothers. That this was a precedent condition may well be inferred from the circumstances and from the reflection of the son himself, when about to die, that he had not paid one cent, a reflection which would most probably not have suggested itself, were the payments to have been made only after the termination of the life estate.

The construction of the testimony, most favorable to the plaintiffs, would be, that the father intended an advancement to three of his sons, and that instead of giving each one third of this land, he would arrange it so as that his son William should have the whole of this land, but without disparagement to the equal rights of the other sons, who must receive two thirds advanced for the purchase money. Of course, if this were not paid, the title would remain in the father, for the benefit of his other sons, at least for two thirds of the land.— So that even this testimony shows that the son could not claim by the deed ; and if, as an advancement, it would be for but a limited extent, and dependent on conditions and contingencies. The whole of the evidence shows that the equity was in fact with the father.

As to the proposition by the elder Shepperd, in his answer to the petition in the County Court, that he intended to pro-

vide for his grand children, leaving to their guardian to choose whether he would take this land at eight hundred dollars in lieu of so much out of his estate, it is only necessary to say that this was a mere proposal not accepted, at least in the terms in which it was made, but with conditions in relation to rents and profits ; and at the same time, with an utter denial of any right in Shepperd, the father, urging the claims of the estate of the son to the land, and pressing the claim to judgment. An offer thus treated and repelled could raise no obligation.

A question has been raised in this case, relative to the power of the husband to dispose of his homestead without his wife's consent. This restriction applies where the husband has acquired full property in the land, and not where it is charged with preceding equities or incumbrances. These must be discharged, and they have precedence over the rights of the homestead privilege ; and the right of a husband to make arrangements in relation to these incumbrances, or to renounce lands thus burthened or subject to conditions and contingencies, could not be questioned by the wife, in virtue of her remote right which might arise if the incumbrances or conditions were ever discharged or removed, unless in cases where the husband is squandering the property, with the fraudulent design of depriving his wife of a homestead.

Another question has been made, with reference to the testamentary power of a husband over his homestead lands, without the consent of his wife ; and this can be considered when presented in a case where the husband is attempting to bequeath his own lands, and not, as in this case, where the declarations of the son, in the supposed will, were in relation to lands which were not really his own. The statute intends a homestead for the widow, but whether this would be held the identical homestead on which the husband resided, is another question.

In this case, the trust for the father is of the class known as

resulting trusts, and under the English statutes no parol trusts could be raised against a deed, except those belonging to this class. But as there is no analogous prohibition in our statutes, express trusts can be both created and proved by parol, and will have effect and force according to the nature of the trust.

The charge of the Court embraced the points in issue, and represented, with sufficient fulness, the law of the case.

The case was not materially varied by the evidence introduced at the last trial. If there was any conflict, this was to be reconciled by the jury. The judgment was for the defendants, the land being charged with one third of the purchase money for the plaintiffs.

This disposition is believed to be in conformity with the law and justice of the case, and the judgment is affirmed.