W. P. MABRY, ADM'R, AND MARGARET S. WARD v. W. M.
HARRISON ET AL.

1. SPECIAL ISSUES should be submitted to the jury where different
   issues between various parties are to be determined by the verdict.
2. SAME.—The failure to submit an issue made by the pleadings cannot
   be insisted on as error, unless the testimony would have authorized
   a verdict on the issue in favor of the party complaining.
3. SAME.—The refusal to submit special issues which have already been
   given in the general charge is not error.
4. COMMUNITY PROPERTY.—The husband has the right to convey and
   incumber all real estate of the community which is not the home-
   stead nor has been destinated as the homestead.
5. HOMESTEAD RIGHTS CANNOT DEFEAT OLDER EXPRESS LIENS.—No
   subsequent destination or occupation of premises which have been

incumbered by the husband prior to such destination, can give to the mortgagor or his family such a homestead in the specific property incumbered as would defeat such incumbrance.

6. ALLOWANCE TO WIDOW AND FAMILY.—Such allowance in lieu of homestead, &c., should be made out of the entire estate; it cannot be insisted on as attaching wholly to property occupied as a homestead as against those holding valid incumbrances.

7. EXPRESS LIEN ON RENTS may be enforced on the rents after the death of the party creating such lien.

8. RECEIVER'S ACCOUNTS.—It is proper that a receiver be allowed to settle his accounts with the court whose officer he is; an order directing him to turn over property to another does not relieve him from the control of the court to compel such settlement.

APPEAL from Marion.    Tried below before the Hon. J. D. McAdoo.

Mrs. Margaret S. Ward brought suit to enjoin the sale of lots 11 and 12 in block 29 of city of Jefferson, claimed as the homestead of plaintiff and her husband, W. H. Ward, who, refusing to join as plaintiff, was made defendant.

Plaintiff alleged that she and her husband had in 1866 bought certain lots in Jefferson, investing therein $1,500 of her separate estate, for the purpose of a homestead, and commenced the erection of a building for a residence.

That said lots were exchanged for the said lots 11 and 12, which also were designated and intended for a homestead; that buildings were erected thereon in which they were expecting to reside while in course of construction, part of said building being arranged and fitted for themselves and children, the family in the meantime residing in rented premises and having no other homestead.

That after the designation of said lots 11 and 12 as their homestead the husband, in 1870, executed a deed of trust with power to sell to W. M. Harrison to secure the sum of $20,000, and to J. H. Bemis, trustee for Erasmus Jones, for $12,000, and interest thereon at two per cent. per month.

That these conveyances were made without the knowledge or consent of plaintiff, and that the said Harrison and Bemis were proposing to enforce said liens by sale.

The defendant Harrison answered, denying that the lots were the separate property of plaintiff, setting up his claim and trust deed, and alleged that it was for a loan of money, which was used in erecting buildings for business houses and offices on said lots; that the lots were of the value of $10,000, exclusive of improvements, and the improvements, being a solid block of buildings, of the value of $30,000; that the premises were not occupied or claimed as homestead at the date of the deed of trust, August 15, 1870, nor were they claimed or destinated as such, nor was any attempt made to do so until about twelve months after the completion of the buildings; and that the homestead claim was fraudulent, and a pretense to hinder and delay the creditors in making their money; that the parties only entered part of the house as a residence a few days before the injunction was sued out.

Jones and Bemis answered, claiming under the express terms of the deed of trust the right to collect the rents of the premises in controversy; denied the claims of homestead rights; that its assertion was fraudulent, and with intent to hinder and delay the collection of his debt, &c.

A receiver was appointed; pending the suit W. H. Ward died, and W. P. Mabry was appointed administrator.

Mabry resisted the claim of plaintiff to homestead rights; resisted the authority of the receiver to collect the rents; called on plaintiff to account to the estate for $10,000, which she had received on an insurance policy on her husband's life, &c. By amendment plaintiff alleged that the estate was insolvent; that the lots were homestead at her husband's death; asking that a homestead be allotted her and family, seven children, out of the property, &c.

On the trial special issues were submitted to the jury, which are sufficiently apparent from their findings, as follows:

Answer to 1st. That Mrs. Ward had no separate funds of her own invested in the property in controversy, and

that Harrison, Bemis, and Jones had no notice of any funds of plaintiff being invested at the date of their deeds.

Answer to 2d. That the property was not destinated as a homestead at the time of the trust deeds executed by W. H. Ward to and in favor of W. M. Harrison and J. H. Bemis, agent of Jones, and they had no notice of the same.

Answer to 3d. The family of W. H. Ward moved into the property in controversy on or about December 1, 1871.

Answer to 4th. W. H. Ward and family occupied part of the property as a homestead at the date of his death.

Answer to 5th. The building on the property in controversy is a two-story brick building, originally constructed for six store-rooms on the first floor. One of the partitions being removed, leaves now five storerooms on the first floor. The upper or second story is divided by a hall running parallel with Polk street, with rooms on each side suitable for offices or bedrooms, to be used in connection with the stores below. The house or building is so constructed that it cannot be separated or divided in a partition without detriment to the property. The building was not erected for a residence, but as buildings to be rented, and to a number of occupants above as well as below.

Answer to 6th. The family occupied the upper portion over the store of C. H. Welch, and the front rooms over the store of Moses Steinleine at the death of W. H. Ward. The rooms so occupied are all on the second floor. The lower rooms to same in that part of the building immediately over Welch's store, fronting 25 feet on Polk street, running back 90 feet with Lafayette street, the room over Steinleine's store fronting on Polk street 25 feet, and running back to the hall, dividing the building.

Answer to 7th. The occupancy of the property in controversy by plaintiff was to delay the sale of the same.

Answer to 8th. The value of the lots at the time of the execution of the mortgages was nine thousand dollars.

Answer to 9th. The value of the property, exclusive of

improvements, at the time of the occupancy by W. H. Ward and family was nine thousand dollars.

Answer to 10th. The value of the lots, exclusive of improvements, at the time of Ward's death was nine thousand dollars.

Answer to 11th. The value of the property (lots and improvements) in controversy was forty thousand dollars at the time of Ward's death.

Answer to 12th. Mrs. Ward, the plaintiff, did receive the proceeds of a $10,000 life insurance policy, the premium of which, $250, was paid by W. H. Ward semi-annually during his lifetime.

Answer to 13th. About $17,000 of notes and accounts uncollected and real estate to amount of $7,000, the present value of which being unknown to us.

The plaintiff asked the court six other issues to be submitted to the jury, which were refused, "because embraced in the general charge given."

Upon the verdict the court entered a decree dissolving the injunction ; disallowing the homestead claims of plaintiff as against the mortgage deeds of Harrison, Jones, and Bemis ; establishing the claims of Harrison and Jones upon the lots in controversy, and of Jones upon the rents, as well those before as since the death of Ward, but, as mortgage debts are postponed to the payment of the funeral expenses and expenses of last sickness, the sale of the mortgaged property and paying out the proceeds of the sale and the mortgage rents be remitted to the hands of the administrator, subject to the payment of said expenses and costs of administration, so far as they have priority over said mortgages, if it shall appear that the assets of the estate are insufficient to pay said expenses after the assets have been marshalled on the probate side of the docket, where the rights of creditors can be protected according to priority ; that the policy of insurance of $10,000 forms no part of the estate, but is adjudged to be the separate property of Mrs.

Ward; the question of substituted allowance for a year's provisions, and for value of a homestead and exemptions, are left to be considered by the court in the administration of the estate on the probate docket; costs were adjudged to defendants.

Motions for new trial were overruled, and appeals were taken by plaintiff and by Mabry, administrator of Ward.

*Penn & Todd* and *D. B. Culberson*, for appellants, cited the following authorities: Adkins *v.* Ware, 35 Tex., 583; Hancock *v.* Morgan, 17 Tex., 582; Pryor *v.* Stone, 19 Tex., 373; Sossaman *v.* Powell, 21 Tex., 664; Moore *v.* Whitis, 30 Tex., 442; Hamblin *v.* Warnecke, 31 Tex., 91; Wilson *v.* Cochran, 31 Tex., 677; Welch *v.* Rice, 31 Tex., 688; Robertson *v.* Paul, 16 Tex., 472; Blair *v.* Thorp, 33 Tex., 38; North *v.* Shearn, 15 Tex., 174; Eckhardt *v.* Schlecht, 29 Tex., 132; Hatchett *v.* Conner, 30 Tex., 104; Ragland *v.* Rogers, 34 Tex., 617; Hudson *v.* Wheeler, 34 Tex., 356.

*Mabry & McKay*, for appellant Mabry.

*W. L. Crawford*, for appellees, cited Berry *v.* Donley, 26 Tex., 748; Sharp *v.* Baker, 22 Tex., 316; Cravans *v.* Williams, 35 Tex., 54; Gray *v.* Burk, 19 Tex., 232; Hicks *v.* Bailey, 16 Tex., 231; Oliver *v.* Chapman, 15 Tex., 406; Potshuisky *v.* Krempkan, 26 Tex., 309; Smithwick *v.* Andrews, 24 Tex., 488; Garrett *v.* Chambliss, 24 Tex., 618; Cooke *v.* Bremond, 27 Tex., 457; Guiod *v.* Guiod, 14 Cal., 506; Philleo *v.* Smalley, 23 Tex., 502; Franklin *v.* Coffee, 18 Tex., 417; Farmer *v.* Simpson, 6 Tex., 310; Bishop *v.* Hubbard, 23 Cal., 514; Riddle *v.* Shirley, 5 Cal., 488; White *v.* Shepperd, 16 Tex., 172; 25 Tex., 701; 6 Tex., 310; 6 Cal., 165; 11 Page, 436; 10 Page, 43; 2 Hilliard on Mort., 422; Powell on Mort., 281; 9 Vesey, 320; 41 Ga., 207.

GOULD, ASSOCIATE JUSTICE.—This suit was instituted by appellant, Mrs. M. S. Ward, to enjoin the appellees from selling under deeds of trust from her husband, W. H. Ward, certain lots and improvements in the city of Jefferson, which she claimed to be her homestead and in part her separate property. She made her husband a party defendant, and he dying after the commencement of the suit, appellant Mabry became administrator of his estate, and was made a party defendant. The principal question in the case was the same after Ward's death that it was before, viz, Did Mrs. Ward have any rights in the property in the question, either as her homestead or as her separate estate, which entitled her to hold it or a part of it free from the defendants' liens? After the death of Ward it does not appear to have been contended by defendants that they could proceed to sell under the deeds of trust, but the litigation was continued and was still necessary in order to settle the disputed question as to Mrs. Ward's rights. In an amended petition she claimed that at the time of her husband's death, this property was actually occupied as a homestead by herself and seven children ; that his estate was insolvent, and asked to have whatever homestead rights she might have therein allotted to her out of this property, claiming that those rights took precedence of defendants' liens.

The administrator Mabry, in his pleadings, contended that to him as administrator, rather than to a receiver who had been appointed by the court, properly belonged the custody of the property in controversy and the collection of its rents; that all of said property was the property of Ward's estate, and should be assets in the hands of his administrator; that the plaintiff had received the proceeds of a policy for $10,000 on the life of her husband which properly belonged to his estate, and for which he prayed judgment against her.

The defendants also, in their capacity as creditors, claimed

that Mrs. Ward account for the proceeds of the life policy ; they asked also for an order for the sale of the property.

On the trial numerous special issues were submitted to the jury, and upon the findings the court entered up a decree dissolving the injunction and directing that the claim of plaintiff to a homestead be disallowed as against the mortgages of defendants, declaring the property subject to said mortgages, and decreeing "that the sale of the mortgaged property and paying out the proceeds of the sale, as well as the rents mortgaged, be remitted into the hands of the administrator." It was also adjudged that the proceeds of the life policy formed no part of the estate, and that the questions of allowance to Mrs, Ward in lieu of a homestead be left to be decided in the administration of the estate. From this judgment Mrs. Ward and the administrator prosecute separate appeals, which are, however, considered together.

They both claim that the court erred in submitting special issues to the jury. It does not appear, however, that any such objection was made or point reserved at the time. The case moreover was a proper one for special issues—the different issues between the various parties seeming to require it.

The administrator claims that by the pleadings no issue was presented as to the waiver by defendant Jones of his right to receive rents, and that it was error to fail to submit an issue on that point. He should have asked the submission of such an issue at the time, and as it does not appear that he did so, and further, as the evidence would not in our opinion support a finding that there had been such waiver, we think the failure, if an error, becomes unimportant.

Mrs. Ward complains of the refusal of the court to submit sundry issues asked on her part. In so far as these issues were at all material they were embraced in those submitted and passed upon.

The verdict of the jury negatived any separate interest in Mrs. Ward in the property, and also negatived her claim that it had been destinated as a homestead prior to execution of the deeds of trust to the defendants. The verdict fixes the actual occupation of the premises by Mrs. Ward as commencing about December 1, 1871, being after the execution of the deeds of trust. In response to the question, "Did Ward and his family occupy the property or any part of it as a home at the date of the death of W. H. Ward?" the reply is, "W. H. Ward and family occupied a part of the property as a homestead at the date of the death of W. H. Ward." Taken in connection with the question asked and the answers to other issues, it is evident that this response means no more than that at Ward's death he and family occupied the property as a home.

We think that the findings of the jury show that Mrs. Ward had no right to this specific property, either as separate property or as a homestead. At the time her husband incumbered it to the defendants it had not been destinated as a homestead, and it was perfectly competent for him to mortgage it for the purpose of raising money. Whether, as alleged by defendants, the money was borrowed for the purpose of, and was actually expended in, improving the property is not material. The mortgages and deeds of trust were at all events express liens, and no subsequent occupation of the premises by Ward could give him or his family such a homestead in these specific lots and improvements as would defeat those liens. To give such effect to subsequent occupation would be to violate the obligation of contracts. The proposition is not supported by the cases cited by counsel for the appellant, and it is believed requires no labored refutation. In Stone *v.* Darnell, 20 Tex., 11, the lien grew out of the levy of an execution and not from express contract. (Farmer *v.* Simpson, 6 Tex., 307; Potshuisky *v.* Krempkan, 26 Tex., 307; White *v.* Shepperd, 16 Tex., 163.)

But it is claimed that if Mrs. Ward had no homestead in this specific property, she was entitled to have the value of such a homestead out of the assets of the estate exempt from administration, and it is claimed that the court erred in leaving this matter to be decided when the question should arise on the probate side of the docket in the administration of the estate.  Certainly any allowance to which the widow of W. H. Ward may have been entitled out of his estate should be made out of the entire estate, and not wholly charged on the property bound to defendants.  The jury found that there were other assets of the estate to a considerable amount, and if the pleadings and prayer of the plaintiff presented any such claim it was properly remitted to the probate side of the court.

It is assigned as error that the court submitted to the jury an issue as to the good faith or fraud of plaintiff in moving into the house, because it is said she was a married woman and moved with her husband.  This issue seems to have been unnecessary, and the finding may be disregarded without affecting the validity of the decree.

Another error assigned by the administrator is that the rents of the building were improperly adjudged to defendant Jones, under a clause in his deed of trust assigning to the trustee all sums of money that might accrue from rents of the building, and empowering him to receive and receipt for the same.  The deed of trust undoubtedly gave a lien on the rent to Jones, and the decree correctly recognizes and enforces it.  That part of the decree adjudging the proceeds of the life policy to Mrs. Ward has not been complained of in the assignment of errors, and is not before us for revision.

It is claimed that the decree should have directed the receiver to account to the administrator.

It would seem proper that the receiver should be ordered to settle his accounts with the court whose officer he is.  If this has not been done he is subject to the order of the court, and may at any time, on the motion of parties interested,

be required to settle his accounts and to pay over any sum in his hands. (Kerr on Receivers, 233.)

Our examination of this voluminous record has led us to the conclusion that it shows no error entitling either of the appellants to a reversal.

The judgment is accordingly affirmed.

AFFIRMED.

[Justices MOORE and REEVES did not sit in this case.]