EPHRAIM HICKS v. T. W. MORRIS

(Case No. 1119.)

1. HOMESTEAD — EQUITABLE LIEN — MORTGAGE — SUBROGATION.— A promissory note and mortgage made by husband and wife, for borrowed money, loaned in 1871 to prevent the sacrifice of the homestead for unpaid purchase money, and which note on its face declares that it is executed for the purchase money of the homestead, subrogates the holder, when the money is applied in paying off the lien, to the rights of the original vendor.

2. SAME.— Such a note was afterwards renewed, and still declared on its face the lien, though it was for a larger amount, and included money not used in satisfying the vendor's lien on the homestead. *Held —*

   (1) That the renewed note was secured by the mortgage for the amount used in discharging the lien on the homestead.

   (2) The fact that the old note, at the date of its renewal, was cancelled, as was also the mortgage, with no other consideration than the execution of the new note, and the parties still believing that the debt was secured on the land, cannot affect the rights of the holder. Equity would disregard the cancellation of the mortgage and keep it alive for the benefit of the creditor.

3. EVIDENCE.— The recital in the note that it was given for the purchase money of the land could be explained by parol testimony showing the real nature of the transaction; such testimony being explanatory of the recital of a fact which the party offering it was not estopped from denying.

4. CASE OVERRULED.— Autrey v. Whitmore, 31 Tex., 627, overruled.

5. HOMESTEAD — LIEN. — The fact that the money was loaned to discharge the lien before the note and mortgage were executed, would be immaterial if the money was loaned on the faith of an agreement that the note and mortgage should be executed.

6. EQUITY — SUBROGATION.— Equity will subrogate the lender who advances money to pay a lien creditor, to his rights under the lien, as effectually as if he had become the assignee of the purchase money notes.

7. CASE OVERRULED.— Malone v. Kaufman, 38 Tex., 454, overruled.

APPEAL from Morris. Tried below before John Penman, special judge.

The opinion states all of the case necessary to be stated.

*G. T. & C. S. Todd* and *J. M. Moore*, for appellant.

I. In the absence of fraud or mistake, no writing can be contradicted or varied in its terms, by a party to it, by parol testimony as to antecedent or contemporaneous transactions. The appellee himself signed the note, which was read without objection. The defendant was then asked by his counsel, when placed on the stand, whether the note was in fact given for purchase money. Heatherly v. Record, 12 Tex., 50; Smith v. Garrett, 29 Tex., 52, 53; Self v. King, 28 Tex., 553, 554; 1 Greenl. Ev., §§ 303, 304; Chitty on Con., 2d ed., p. 22.

II. Money advanced by a third party to a vendee of land, and the taking a note therefor reciting it to be for purchase money of such land, does not show an abandonment, but a retention of the vendor's lien. Flanagan v. Cushman, 48 Tex., 244, 245; Irvin v. Garner, 50 Tex., 55. The waiver of the vendor's lien is a question of fact and intention, and such lien is not merely a security for the original note, but for the debt of which the note is the evidence. Irvin v. Garner, 50 Tex., 55; Flanagan v. Cushman, 48 Tex., 245, and authorities there cited.

III. The vendor's lien follows the debt for which it is security, into whatever shape or form the debt may assume, and he who advances the money to pay off the debt acquires the lien. Flanagan v. Cushman, 48 Tex., 245; Irvin v. Garner, 50 Tex., 55.

GOULD, CHIEF JUSTICE.— This suit is on a promissory note for $456.60, gold, with interest from date, made by defendant Morris on August 27, 1875, and payable to plaintiff Hicks. The note contains this recital: "This note is executed for the purchase money for the place that the undersigned now resides on." The petition alleges that the note was given for the purchase money of a certain described tract of land, "and by agreement and understanding of the parties constitutes a vendor's lien thereon;" states that defendant is in possession of the land by virtue of a deed from one W. E. Hart, administrator, and prays for judgment for the debt and foreclosure of the lien on the land.

The answer denies that the note was for the purchase money of the land, but alleges that it was given in renewal of a note made by defendant and his wife for the sum of $280, coin, on July 24, 1871, due twelve months from date, payable to said Hicks or bearer, secured by a mortgage also executed by Morris and wife on the land described in plaintiff's petition, the consideration of said note and mortgage being $280 money loaned. That the note sued on was given for the principal and accrued interest of the $280 note, and that in consideration therefor the first note and mortgage were cancelled and delivered by plaintiff to defendant. The $280 note and mortgage of July 24, 1871, are made exhibits to this answer; they are in the ordinary form, and both show, written across their face, " This instrument is void, this August 27, 1875."

The case was tried without a jury. The written evidence adduced consisted of the note sued on, the note and mortgage made exhibits to the answer, and a deed from Hart, administrator of the estate of Boyd, to defendant for the land. The only witnesses were plaintiff and defendant. From their testimony it appears that the land was bought at administrator's sale for $390. Morris says he gave his note with personal security for the land; does not know whether he also gave a mortgage or not; but knows the land was held bound for the money. In 1871 Morris applied to Hicks, telling him that his home was about to be sold, and, unless he could get the money, would be sold, proffering, if he would lend him the needed amount, to secure him by the land. The plaintiff says that on his agreeing to let him have the money, Morris, who lived in an adjoining county, went hence, returned with the note and mortgage, and he then let him have the $280. Morris denies that the note was for the purchase money of land, but says it was agreed that the money loaned was to be secured by the land; that he got the money and paid $277 of it to Hart, administrator. Morris afterwards got $20 more, and in 1875 he renewed his note, including in the new note accrued interest and this $20. Hicks testifies that at the time this note was given, it was fully understood and agreed between him and Morris that he was to be secured by the land on which said money was to be paid.

The court finds that the intention of Morris was to bind the land for the money borrowed, and that he endeavored to do so by giving the mortgage, but that " there is no evidence that it was the intention of the parties to transfer the security which Hart may have had, or that plaintiff stipulated therefor. It was simply a loan of money for a specific purpose, to be secured by defendant, and not by Hart or any other person."

The finding proceeds: "It is therefore considered by the court that plaintiff has not shown himself entitled to the equities that may have been in Hart, if any existed; that when the debt of (to) Hart was paid and satisfied by the defendant with the funds that he had borrowed from plaintiff, the lien, if any existed, which the evidence does not show, except the statements of defendant and plaintiff, was discharged, and there being no connection between the original transaction and the transaction between plaintiff and the defendant, the plaintiff's debt was an ordinary one with such security as defendant only could give. The taking of a mortgage in itself would not destroy the vendor's lien, and if the plaintiff had owned the original notes, he could have made it manifest in that way. But plaintiff having never purchased the same, or had any connection therewith, the taking of the mortgage shows that he relied upon that as a security. Defendant could not afterwards, by an acknowledgment in the note sued upon, create a vendor's lien, if the same had become extinct. The lien was extinguished when the Hart note was paid. The plaintiff is entitled to recover the principal and interest of the note sued upon, but is not entitled to foreclose a vendor's lien upon the land, and judgment is ordered accordingly."

From the judgment rendered as directed the plaintiff appeals. The evidence for the purpose of showing that the note sued on was not given for the purchase money of the land, was objected to, on the ground that it sought "to vary or contradict the terms of the contract as evidenced by the note." This objection was not well taken. The recitals of facts in the note are to be distinguished from those parts of the note which state the contract. Discussing the rule excluding parol evidence, Mr. Greenleaf says: "Neither is the rule infringed by the introduction of parol evidence contradicting or explaining the instrument in some of its recitals of facts, where such recitals do not, on other principles, estop the party to deny them; and accordingly in some cases such evidence is received." Sec. 285. On principle such recitals, like the statement of the consideration of a deed, or like a receipt, are open to contradiction. Howards v. Davis, 6 Tex., 174.

2. The court, we think, erred in holding that the evidence did not show that any lien existed in favor of Hart. It is probable that this finding was based on the case of Autrey v. Whitmore, 31 Tex., 627, which has been overruled during the present term. See Wright v. Heffner.

Referring for our views to the opinion in the latter case, it is only necessary to add that Morris testifies that the land was held

bound for the purchase money. Such being the understanding of the parties, it is manifest that the lien was not waived.

In our opinion the legitimate conclusion from the evidence is that the defendant's homestead was incumbered by a valid lien to the extent of $277, and that it was to save his home from being sold to pay this debt that he borrowed the $280 from the plaintiff.

3. The homestead being thus incumbered and endangered, it was competent for Morris and wife to substitute a new incumbrance for the old one. The constitutional prohibition of a forced sale of the homestead was designed to protect it, not to compel its sacrifice. A sacrifice might be the result, if, when the homestead is about to be subjected to a valid lien, the husband and wife could not utilize the homestead as a security by means of which to raise money to pay off the old incumbrance. That a mortgage given for that purpose would be valid, is believed to be the settled law, and too manifestly right in principle to be seriously questioned. Farmer v. Simpson, 6 Tex., 303; White v. Shepherd, 16 Tex., 172; Clements v. Lacy, 51 Tex., 159, 160.

4. The evidence shows that the loan of the $280, the execution of the mortgage to secure that loan, and the payment of the purchase money to Hart, should all be regarded as contemporaneous transactions, resulting in the substitution of the debt and mortgage to Hicks for the debt and lien to Hart. Because the parties to these transactions were not all at the same place, it may be that the money was loaned to Morris, and by him paid over to Hart, before the note and mortgage were executed and delivered. If so, the loan was made on the faith of the agreement to give a mortgage binding the land. "An agreement to give a mortgage, not objectionable for want of consideration, is treated in equity as a mortgage, upon the principle that equity will treat that as done which by agreement is to be done." 1 Jones on Mortgages, 2d ed., sec. 163; 1 Story's Eq., sec. 64g. When the mortgage was executed it became "as effectual for all purposes as if it had been reduced to writing originally." 1 Jones on Mortgages, sec. 164. Says that author: "In this way a mortgage made a few days before the bankruptcy of the mortgagor, but in pursuance of a parol agreement made fifteen months before, and based upon a good consideration, is good against the assignee in bankruptcy, and is not open to the objection that it is void as a fraudulent preference." Id., citing Burdick v. Jackson, 7 Hun (N. Y.), 488.

We think it clear that the mortgage must be regarded as contemporaneous with the loan of the money and the payment of the

purchase money note, and its validity and force are in no wise impaired because in fact it may not have been executed until after the purchase money note was paid to Hart. If at the time, that note had been transferred to Hicks, the land would unquestionably have remained bound therefor. There is nothing in the constitution or statutes prohibiting such a transfer, by means of which an existing valid incumbrance on the homestead passes to the assignee. But surely it cannot be material through what forms this result is brought about — whether by the transfer of the old note and lien, or the substitution of a new note and new evidence of the lien. It is only through the force of a rule in equity that the assignee of the purchase money note would take with it the vendor's lien. But equity will accomplish the same result, where money is loaned to the debtor to take up his note secured by lien, upon his agreement that the person lending the money shall be substituted to the securities of the lien creditor. Equity will subrogate the lender to the benefit of those securities as effectually as if he had become the assignee of the purchase money note. Tradesmen's Building Association v. Thompson et al., 32 N. J. Eq., 132; Receivers of N. J. Midland R'y Co. v. Wortendyke, 27 N. J. Eq., 659; Wilson v. Brown, 2 Beas. (N. J.), 277; Morgan v. Hammett, 23 Wis., 31; Lockwood v. Marsh, 3 Nev., 138; King v. McVickar, 3 Sandf. Ch., 192; Kitchell v. Mudgett, 37 Mich., 82; Caudle v. Murphy, 89 Ill., 352; Carr v. Caldwell & Vermule, 10 Cal., 380; Sheldon on Subrogation, secs. 8, 19, 247, 248.

The case last cited is much like the one before us. Vermule's homestead being advertised for sale under a decree foreclosing a mortgage for the purchase money, he, on the day of sale, borrowed money of Carr to be applied to the satisfaction of the decree, agreeing to give him a mortgage on the property, the homestead; a few minutes after the money was paid the mortgage was executed, but not joined in by Vermule's wife. After Vermule's death the premises were set aside to the widow as a homestead, and Carr brought suit to subject it to his debt, claiming that as the former incumbrance had been paid off by money loaned by him to Vermule for that purpose, under an agreement to give him a mortgage on the premises for his loan, he ought to be permitted to stand in the place of the holder of the former mortgage. The court say: "It would seem on every principle of justice and equity he is right. We think his claim as clear in law as it is in justice. . . . The satisfaction of Gordon's mortgage and the execution of Carr's may be said to be contemporaneous acts. It cannot be doubted that if the

note and mortgage of Gordon had been renewed, the homestead would have continued bound. Can it make any difference in equity whether the first debt be renewed, or another debt — if it be another — for the same sum created, to raise money to pay off the first? A clear title to the homestead could not vest until the payment of the purchase money. In equity and in effect, the advance of the money by Carr, under the circumstances, to pay off the purchase money due, was equivalent to so much purchase money. The debt was to all intents and purposes the same, though the creditor was changed." See, also, Swift v. Kraemer, 13 Cal., 529, and Bissell v. Schie, 9 Cal., 106; Thompson on Homesteads, secs. 344-6, where this case is cited with approval, and the case of Malone v. Kaufman, 38 Tex., 454, criticised. After a careful examination of the opinion in Malone v. Kaufman, and of the authorities cited in that opinion, we have become satisfied that the rule there laid down cannot be maintained on principle, and that there are urgent reasons why we should decline to be bound by it. It is of the first importance that the head of the family be not unnecessarily embarrassed in making arrangements to renew debts for the purchase money of the homestead. The creditor holding several purchase money notes may be unwilling to transfer them as they mature, desiring that those first becoming due be absolutely cancelled in order that the remaining notes may be the better secured. The debtor should be left free, regardless of the creditor's assent, to substitute a new creditor to those rights which he would have as assignee of the purchase money notes. The constitutional safeguards thrown around the homestead do not inhibit the renewal of a valid lien by means of such a substitution, any more than it does such renewal by means of an assignment of the debt and lien to a new creditor willing to extend further time.

5. It is evident from the recitals of the note sued on, the testimony of the parties, and the answer of defendant, that the note and mortgage of July, 1871, were supposed to be renewed by the note given in August, 1875, the lien evidenced by the mortgage being supposed to be continued and made more secure by the recitals of that note. The plaintiff's rights should not be affected by reason of the cancellation of this mortgage, done without other consideration than the execution of the new note, and done under the evident belief, on both sides, that the debt was still secured by a lien on the same land. Under the circumstances, if the lien sought to be secured by the note prove invalid, equity would disregard the discharge of the mortgage and keep it alive for the protection of the creditor. The

debt evidenced by the last note is not strictly the purchase money of the land, yet it is true that it is in part the same debt which was renewed by substitution when the mortgage was given, and again renewed in August, 1875. The intention of the parties throughout has been to keep the land, the homestead, bound for the purchase money and for the money borrowed to pay that purchase money debt. To the extent that the note sued on is a renewal of so much of the debt for borrowed money as was wanted and used to pay for the homestead, it 'is, we think, still secured by that mortgage. Swift v. Kraemer, 13 Cal., 530; Bissell v. Schie, 9 Cal., 106; Ellis v. Singletary, 45 Tex., 27; Monroe v. Buchanan, 27 Tex., 246; Galbreath v. Templeton, 20 Tex., 45. The sum borrowed July 24, 1871, for that purpose was $277, which, at twelve per cent. interest up to the date of the judgment, makes a total of ($617.71) six hundred and seventeen dollars and seventy-one cents, for which sum, with interest at twelve per cent. from the date of the judgment, the homestead is held bound, and the decree of foreclosure prayed for awarded.

6. We have had some hesitation in reaching this conclusion because of the extreme generality of the plaintiff's pleadings. If objection had been made to the petition on this ground it should have been sustained. The record shows a general demurrer to the petition, but as no action thereon appears, it must be regarded as waived. The case was submitted to the court, and appears to have been decided on the facts — the pleadings being treated as sufficient to admit of evidence of those facts. Under the circumstances we have not felt called on to examine the correctness of this procedure.

The judgment will be reversed and reformed in accordance with this opinion.

REVERSED AND REFORMED.

[Opinion delivered December 5, 1882.]