GEORGE A. JOHNSTON ET AL. v. J. R. ARRENDALE.

Decided November 26, 1902.

1.—Practice in Trial Court—Exceptions—Harmless Error.

Where the matters alleged in a supplemental petition were not insisted on at the trial, and did not form any basis for the judgment rendered, the action of the court in overruling exceptions to such pleading could not have been to defendant's prejudice.

2.—Homestead—Prior Liens.

The homestead right is subject to prior liens existing on the homestead property.

3.—Same—Change in Form of Lien—Repurchase.

Where the owner of a homestead, a prior lien upon which has gone to judgment, arranges with another who advances the money to discharge the debt and certain tax liens, buys in the property and reconveys it to such owner, taking his note secured by mortgage on the property, the homestead right is subordinate to the lien so created, although through such foreclosure sale, and for a sum less than the original debt, such owner secures also the interest of a co-owner in the property.

Appeal from the District Court of Bexar County. Tried below before Hon. S. J. Brooks.

*T. F. Shields* and *William Aubrey,* for appellant.

*Ball & Ingrum,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought on March 12, 1902, by the appellee, J. R. Arrendale, against the appellants, George A. Johnston and his wife, Annie C. Johnston, upon a certain promissory note executed March 13, 1899, by appellant George A. Johnston to W. W. Sloan for the sum of $2300 (which note will be more fully described in our conclusions of fact), and to foreclose a vendor's lien expressed in said note, and a mortgage made contemporaneously with it to better secure the payment of the money, upon a certain lot or parcel of land situated in the city of San Antonio, Texas, which land will be more fully described in our findings of fact.

The defendants answered by general and special exceptions to the petition, and specially plead that the parcel of land, upon which the foreclosure of the alleged liens was sought, was, at and long prior to the time the note and mortgage were executed, their homestead; that the note sued on was given by G. A. Johnston for money loaned to him by the plaintiff through his agent, A. A. Gray; that it was not given for the purchase money of the property, and that the vendor's lien was expressed therein, and the mortgage executed, for the purpose of evading the Constitution and laws of the State prohibiting the loan of money on a homestead.

The appellee, by a supplemental petition in reply to appellant's plea of homestead, alleged certain facts which he claimed subrogated him to a prior vendor's lien which he claims was discharged by the money evidenced by the promissory note sued on. To this supplemental petition the appellants interposed special exceptions. As the alleged matters of subrogation were not insisted on or submitted to the jury on the trial of the case, it was unnecessary to state the allegations in the pleading or exceptions to it.

The exceptions to appellee's pleadings having been overruled, the case was tried before a jury, who returned a verdict in favor of the appellee for $2460.71, upon which the judgment appealed from was entered.

*Conclusions of Fact.*—On the 13th day of March, 1899, the appellant George A. Johnston executed and delivered to W. W. Sloan a certain promissory note for the sum of $2300, payable three years after date to the order of said Sloan in United States gold coin, with interest at the rate of 8 per cent per annum from date until paid, interest payable semiannually. The note recites that it was given in part payment for a certain lot or parcel of land opposite the United States arsenal grounds in San Antonio, Bexar County, Texas, fronting 25 2-5 varas on the west side of South Flores street, and running back between parallel lines to San Pedro Creek for depth. It further recites that said property was conveyed by Sloan to the maker of the note, to secure the payment of which a vendor's lien is reserved in said note and conveyance; that to guarantee the payment of the note, George A. Johnston, joined by his wife, on the same day executed a deed of trust to A. A. Gray, trustee, on the land described. In the note is stipulated an agreement

between G. A. Johnston and W. W. Sloan that on failure to pay it or any installment of interest thereon when due, said note shall, at the election of the holder thereof, mature. It further provides that if the note is placed in the hands of an attorney for collection, or if collected by suit, then an attorney's fee of 10 per cent additional shall be added to the full amount due as attorney's fees. On the 13th day of March, 1899, contemporaneous with the execution of said note, W. W. Sloan executed to G. A. Johnston his deed of that date conveying the property described in the note. The deed recites a consideration of $3000, of which $700 is recited as paid in cash, and $2300 by note, which is the same note hereinbefore described, and expressly retains a vendor's lien to secure its payment. At the same time the deed of trust recited in the note was executed by Geo. A. Johnston and his wife to A. A. Gray, as trustee, to better secure W. W. Sloan in the payment of said note. It provides that upon failure of G. A. Johnston to pay the taxes on the property, or to keep the premises insured, the owner and holder of the note may declare the same due and payable. The note was assigned by W. W. Sloan by indorsement, without recourse, to J. R. Arrendale. To the latter was also assigned by Sloan the superior title to said property such as a vendor has for the unpaid purchase money, which assignment refers to the deed of conveyance from Sloan to Johnston and the deed of trust made by Johnston and wife hereinbefore described, as well as to the note. The appellant failed to pay the installments of interest when due on said note. He also failed to pay the taxes upon the property, and to keep the premises insured for which the note was given. On account of such failure the appellee, who was the owner and holder, elected to and did declare the note mature and the whole amount due, and placed the note in the hands of an attorney for collection. The amount due on the note, principal and interest, and attorney's fee, amounted in the aggregate to $2460.70, as found by the verdict. These are the immediate and undisputed facts upon which appellee's action is based and his judgment rests.

The facts leading to the execution of the note and deed of trust or mortgage are as follows: On September 19, 1892, Anna Smith sold the property in controversy to appellant, G. A. Johnston, and H. M. Carroll, who executed to her their joint and several promissory notes for $2000 each, which expressly retained a vendor's lien upon the property to secure their payment. Afterwards, in 1894, Johnston and Carroll partitioned the property between them—Johnston taking the north half and Carroll the south half. There was a dwelling house upon the premises at the time they purchased and when they made the partition. The family of each resided upon his portion up to 1898, when the house was destroyed by fire. Prior to its destruction Hedwig Schramm became the owner of the two promissory notes, and after the property was burned brought suit on them against Johnston and Carroll for a foreclosure of the vendor's lien expressed, and obtained judgment against both Johnston and Carroll on the 23d day of January, 1899, for the

sum of $5820, with a foreclosure of the lien as it existed on September 9, 1892. Pending the suit, and before the judgment was rendered, Johnston, being anxious to rebuild on the lot, agreed with the attorney of Schramm to pay him $2470.31 in discharge of the indebtedness evidenced by said notes as well as the vendor's lien on the property. He, not having the money to pay the amount thus agreed upon, and to discharge liens for taxes due upon the property, arranged with A. A. Gray, as agent for appellee, to borrow $2000 for the purpose of appropriating it towards the discharge of said indebtedness and tax liens. In order to secure the money and enable Johnston to acquire Carroll's half of the property, it was agreed that the suit of Schramm on said vendor's lien notes should go to judgment, and the lien foreclosed; that then the property should be sold under the judgment, and bought in by Arrendale, who should thereafter reconvey it to Johnston and take his note for the $2000 which Arrendale had through his agent agreed to let him have, reciting that it was a part of the purchase money, and retaining a vendor's lien to secure it. After the judgment of foreclosure was obtained in the Schramm suit, it was assigned under this arrangement by Schramm to J. R. Arrendale, and on February 2, 1899, an order of sale was issued thereon and the property advertised for sale. But Arrendale being absent, it was agreed for the convenience of the parties that W. W. Sloan should buy in the property, instead of Arrendale, and after the sheriff's deed was made to him, should convey it to Johnston, take his promissory note expressly retaining a vendor's lien for the purchase money for said sum of $2000, and then assign the note by indorsement without recourse to Arrendale, as well as a deed of trust, which was agreed to be taken from Johnston and wife to better secure the payment of said note. In pursuance of this agreement, Sloan bid in the property at $575 (which was not paid nor intended to be paid), and received a sheriff's deed expressing such consideration for the property, which deed recites that it conveyed all the interest of said Johnston and Carroll as it existed on September 19, 1892. Then Sloan, for the purpose of carrying out the agreement, on March 13, 1899, executed a deed to the property in controversy to G. A. Johnston for a recited cash consideration, as well as in consideration of the note for $2300, which is the basis of this suit. The note, by mistake or inadvertence, was made for $300 more than Gray, as Arrendale's agent, agreed to let Johnston have, and this excess of $300 was immediately after its execution credited upon the note. The $2000 was paid by Arrendale, and was appropriated towards the discharge of the $2470.31 which Schramm's attorney agreed to take in settlement of the indebtedness evidenced by the vendor's lien notes made by Johnston and Carroll to Anna Smith, as well as to discharge the taxes due, which were liens upon the property.

While there is some difference in the testimony as to the details of this arrangement made between Johnston and appellee's agent, the uncontroverted evidence shows that it was in substance as shown by these findings; and was performed in good faith by the appellee. After

Johnston, by virtue of his deed from Sloan, acquired title to the property, including Carroll's prior interest, he rebuilt upon it and has occupied it with his family as a homestead ever since. Carroll has never since it was purchased under the order of sale by Sloan asserted or claimed any interest in the property. Ever since that time the Schramm judgment and the notes upon which it was based have been regarded and treated by all parties as satisfied and discharged.

*Conclusions of Law.*—As the matters plead by appellee in his supplemental petition were not insisted upon by him in the trial, nor submitted to the jury, nor enter into or from any basis for the judgment to rest upon, it is unnecessary for this court to consider further those assignments of error which are directed against the action of the trial court in overruling appellant's exceptions to such petition, for it is apparent they could not have been prejudiced by it.

2. Appellants' fourth and tenth assignments of error are predicated upon an error in the transcript of the record as first transmitted to this court, which was corrected in the court below, and its record showing such error brought up by a writ of certiorari issued from this court. The correction showing the record as it was really made relieves it of the errors indicated by these assignments.

3. As early as 1851 it was decided by the Supreme Court that all liens acquired before the homestead has been established must be raised, or it will be subject to a forced sale for the satisfaction of such liens. Farmer v. Simpson, 6 Texas, 303. In fact, ever since the creation of homestead rights by the laws of the Republic and Constitution of the State of Texas, such rights have been held in subordination to liens existing prior to the time such rights attached.

In White v. Sheppard, 16 Texas, 172, Chief Justice Hemphill, speaking for the court, says: "A question has been raised in this case relative to the power of the husband to dispose of his homestead without his wife's consent. This restriction applies where the husband has acquired full property in the land, and not where it is charged with preceding equities or incumbrances. These must be discharged, and they have precedence over the rights of the homestead privilege; and the right of a husband to make arrangements in relation to these incumbrances, or to renounce lands thus burdened or subject to conditions and contingencies, could not be questioned by the wife, in virtue of her remote right which might arise if the incumbrance or condition were ever discharged or removed, unless in cases where the husband is squandering the property, with the fraudulent design of depriving his wife of the homestead." This opinion has often been reaffirmed by the Supreme Court, some of the opinions reiterating the very language quoted. Mabry v. Harrison, 44 Texas, 294; Clements v. Lacy, 51 Texas, 160; De Bruhl v. Maas, 54 Texas, 474; Dillon v. Kauffman, 58 Texas, 707; Brooks v. Young, 60 Texas, 36; Wheatley v. Griffin, 60 Texas, 212;

Morris v. Geisecke, 60 Texas, 635; Hicks v. Morris, 57 Texas, 662; McDougal v. Bradford, 80 Texas, 566.

In Hicks v. Morris, supra, it is said: "The homestead being thus incumbered and endangered, it was competent for Morris and his wife to substitute a new incumbrance for the old one. The constitutional prohibition of a forced sale of the homestead was designed to protect it, not to compel a sacrifice. A sacrifice might be the result if, when the homestead is about to be subjected to a valid lien, the husband and wife could not utilize the homestead as a security by means of which to raise money to pay off the old incumbrance."

It can not be doubted, in view of the principles of law announced in the cases cited, that Johnston had a right to make the arrangement he did with the appellee to discharge the land of the vendor's lien notes held by Schramm; and when it is considered that only half of the lot was his, and that by the agreement he acquired Carroll's title to the other half, he nor his wife should be heard to complain (if they otherwise could) that under the arrangement a part of the money he obtained from the appellee by virtue of it went towards the discharge of valid tax liens, superior to his homestead rights, against the property. Astugueville v. Loustanau, 61 Texas, 233.

After the arrangement was made and carried out by virtue of which he obtained the money from the appellee, a prior lien against his property for more than double the amount he had to pay was wiped out, and he had twice as much property as he had before. Still he don't want to pay the money by which he obtained these benefits. He and every one acquainted with the facts in this case knows that it is nothing but right that he should pay it; and as there is no error in the record which would warrant this court in reversing the judgment of the District Court, which is deemed righteous, it is affirmed.

*Affirmed.*

Writ of error refused.