Stinson v. Richardson.

STINSON v. RICHARDSON ET AL.

1. **Homestead**: LEGAL TITLE: SECURITY FOR PURCHASE MONEY. The fact that the vendor retains the legal title as security for the unpaid purchase money will not operate to defeat the vendee's claim of homestead in the property.

2. ———: CONVEYANCE: BOND FOR DEED. The assignment of a bond for a deed of the property claimed as homestead is of no validity unless the wife, if the owner is married, concur in and sign the instrument of assignment.

3. ———: ABANDONMENT. Abandonment of the homestead would not affect the wife's rights, except to render it liable for the husband's debts.

4. ———: ASSIGNMENT: RENTS AND PROFITS. The assignee of the bond, who took possession under an assignment in which the wife did not join, was properly held to account for the rents and profits, the proceeds to be applied upon a judgment which was a lien on the homestead, and which had been discharged by the assignee.

5 ———: ———: IMPROVEMENTS. The assignee who acquired and took possession in good faith, believing that he had a valid title, was entitled to an allowance for improvements.

*Appeal from the Boone Circuit Court.*

THURSDAY, OCTOBER 19.

THE plaintiff is the wife of the defendant, James Stinson, and is residing with him upon the sixty acres of land which is in controversy in this suit. This land was purchased by the said James Stinson, of one Dawkins for $1,800. About $1,200 or $1,400 of the purchase money was paid from the proceeds of a former homestead owned by said Stinson. The purchase money not all being paid, Dawkins gave Stinson a bond for a deed, retaining the legal title for his security.

Afterwards Stinson sold the land to the defendant, Richardson, who took possession of it except the house occupied by Stinson and his wife, the plaintiff, and the garden attached thereto. The said bond was assigned by Stinson to Richardson, but plaintiff did not join in the assignment, nor execute to Richardson any conveyance whatever. The land at the time of the sale to Richardson, was incumbered by a judgment

| 44 | 373 |
| 81 | 233 |
| 44 | 373 |
| 85 | 543 |
| 44 | 373 |
| 94 | 580 |
| 44 | 373 |
| 97 | 682 |
| 44 | 373 |
| 103 | 269 |
| 44 | 373 |
| f109 | 571 |
| d109 | 578 |

in favor of Dawkins for a part of the purchase money. One Jesse Stinson also held a judgment against said James Stinson, plaintiff's husband, which operated as a lien upon the homestead to a small extent. The house in which said James Stinson resides belonged formerly to said Jesse Stinson, although standing upon the said land purchased by said James of Dawkins. The said judgment in favor of said Jesse included a part of the purchase money of said house, and so far was a lien upon the land paramount to any homestead rights therein. Richardson agreed to pay the said Dawkins judgment, and the said Jesse Stinson judgment, and give said James a team and some other small matters as the consideration for the land. He did pay the two judgments but did not give the team. He occupied the premises from 1872, and made improvements. The use of the premises was worth to him about $180. He added to the value of the premises by improvements about $130.

The plaintiff brings this suit to set aside the assignment of the bond, and avers that the assignment is void because the premises constitute her homestead. Other facts are stated in the opinion. Decree for plaintiff, that the assignment be set aside as to forty acres on which plaintiff resides, being the west forty; that the Dawkins judgment and $150 of the Jesse Stinson judgment be a lien on the whole sixty acres; that the east twenty acres and other property of James Stinson liable to execution be first exhausted, and then the middle twenty acres, and that the value of the improvements, $130, be deducted from the rents and profits, $180, and that the remaining $50 be indorsed on the Dawkins judgment Both parties appeal, defendant, Richardson, perfecting his appeal first.

*D. R. Hindman* and *Kidder & Crooks*, for appellant.

*Hull & Ramsey*, for appellee.

ADAMS, J.—I. It is claimed by the defendant Richardson, that not more than $900 of the proceeds of the former homestead was invested in the land in question, and that the exemption could not exceed that amount. It is admitted that the

former homestead was worth about $1,200, but it is said that it was sold subject to a mortgage then on it amounting to $300. The homestead was sold to one Sebring, in connection with another forty acres, and the evidence shows that the mortgage was upon the latter forty acres.

We think, therefore, that not less than $1,200 of the proceeds of the former homestead went into the land in controversy, and that the forty acres now claimed as a homestead is not worth more than that sum.

II It is contended that, inasmuch as said James Stinson had no title to the land in controversy, except by virtue of his 1 HOMESTEAD: purchase, payments, possession, and bond for a legal title: security for deed, the land never acquired the character of a purchase money. homestead; but we think otherwise. Stinson was the owner of the land. Dawkins held the legal title merely as security for a portion of the purchase money remaining unpaid.

III. The assignment of the bond, without the concurrence of the plaintiff therein, conveyed nothing. Section 1990 of 2. ——: con- the Code, provides that "a conveyance or incum- veyance: bond for brance (of the homestead) by the owner, is of no deed. validity unless the husband and wife, if the owner is married, concur in and sign the same joint instrument." It is contended that the plaintiff assented to and even advised the sale, and that she is now estopped from setting up her homestead rights in the property, if she ever had any. But, if we should hold that she relinquished her homestead rights by verbally consenting to the assignment, or estopped herself by such consent, we should nullify an express provision of the statue.

IV. It is contended that the evidence shows that the land was abandoned as a homestead and thereby lost its homestead 3. ——: aban- character. The abandonment relied upon consists donment. in the fact that Richardson took possession under his purchase with plaintiff's consent, and that plaintiff and her husband were expecting to remove to Kansas; but the purchase, as we have seen, was a nullity so far as the homestead was concerned.

Whether she knew it was a nullity or not, there was nothing that she could say or do about it short of concurring in and signing the same joint instrument with her husband that could give it any validity.    Abandonment could not affect her rights, except so far as it might render the property liable to be taken for her husband's debts.    Had she in fact abandoned her homestead the whole Jesse Stinson judgment, instead of a part thereof, would have become a lien upon it. .But we think she did not abandon it.    She did not cease to live on it, and Richardson's occupancy of the land was, we think, under the circumstances, subject to her homestead rights.

V.    The assignment being void as to the homestead, we think Richardson was rightly held to account for the rents and profits.    Whether a wife, in such case, can maintain her separate action for them, it is not necessary to determine.    By the decree they were applied, after deducting for improvements, on the Dawkins judgment, whereby the homestead 'became relieved to that extent, and we think the decree on that point was right.

VI.    The evidence shows that there are two dwelling-houses on the land.    The one in which the plaintiff and her husband reside is on the west twenty acres, and the other is on the middle twenty acres.    Only one dwelling-house is exempt as a homestead.    But as the incumbrances are such that it will evidently be necessary to sell the middle as well as the east twenty acres, we see no reason for modifying the decree in that respect.

VII.    The Circuit Court held that a part of the Jesse Stinson judgment was the consideration for the house in which plaintiff resides, to-wit: $150.    The purchase, however, embraced not only the house but a mill.    The price of the whole was $1,900.    Of that sum $1,640 was paid, leaving $260, amounting, with costs, to $547.53 at the time the judgment was rendered, to-wit: Nov. 28, 1871.    We see no reason why all the payments which were made should be applied upon the mill.    What was paid should be considered as paid *pro rata* upon all the property purchased.    Of the house debt, then

$150, it follows that $\frac{1640}{1900}$ were paid, leaving unpaid $\frac{260}{1900}$ of it, or $20.50. The *pro rata* share of the judgment for house debt was $43.16. On plaintiff's appeal, the decree should be so modified as to provide that the Jesse Stinson judgment be a lien upon the homestead to the extent of $43.16.

VIII. The plaintiff contends that no allowance should have been made to Richardson for improvements, even as

4. ——: ——: against the rents and profits. But, he evidently
improve-
ments. took possession in good faith, and made the improvements under the belief that he had acquired a valid title to the property. The improvements which he made appear to have been judicious, and in some sense necessary. They were for breaking, fencing and repairs, for grubbing and clearing land, and building a corn-crib and stable, being improvements called for by the condition of the farm and not inconsistent with the circumstances of the persons holding the property as a homestead. Upon this point we think that the decree of the Circuit Court was correct.

As to the amount of the Jesse Stinson judgment, which is a lien on the homestead, the decree should be modified, as above set forth. On the plaintiff's appeal, then, the decree is modified and affirmed, and on the defendant's appeal it is

AFFIRMED.