B. O. WHEATLEY v. FANNIE GRIFFIN.

(Case No. 1526.)

1. HOMESTEAD RIGHT—INTEREST IN LAND.—The homestead right of the wife attaches to any interest in land owned by husband and wife in common, or by either separately. Such a right will attach to an equitable estate, an estate for life, or even to a leasehold interest.

2. SAME.— Such right can only be divested, so long as it is not abandoned, by a conveyance made by the husband and wife in accordance with law.

3. SAME—SCHOOL LAND CERTIFICATE.— A purchaser of school land, who, with his family, settles upon such land, receives the requisite legal certificate, and pays whatever sums of money are necessary when due, and afterwards assigns for value his certificate to another, not being joined by his wife, does not divest her of her homestead interest in the land.

4. SAME—RIGHT OF THE PURCHASER.— In such case, the second purchaser has no right to the land under such transfer; nor can he, when the wife has offered to pay the sums of money yet due or to be due on the certificate, recover from the wife whatever money he has paid to the original purchaser under such facts.

5. SAME—CASES CITED.—Wilder v. Haughey et ux., 21 Minn., 107; Stinson v. Richardson, 44 Iowa, 373, discussed and approved.

6. SAME—ADJUSTMENT OF EQUITIES.—The husband has the right to adjust equities existing prior to the attaching of the homestead right (White v. Shepperd, 16 Tex., 163; Clements v. Lacy, 51 Tex., 150; Gillum v. Collier et

---

---

*als.,* 53 Tex., 592); but in the case at bar no such equities existed at the time of the transfer, and hence this rule does not apply.

7. COSTS.— Where the petition prays for the recovery of the land in controversy, also for the purchase money of the certificate, as well as for money paid in accordance with the terms of the certificate, and a decree is rendered in favor of the plaintiff for the latter item alone, then, in such case, the costs of suit will be adjudged against the plaintiff.

APPEAL from Cass. Tried below before the Hon. B. T. Estes. The opinion states the necessary facts in the case.

*Geo. T. Vaughan* and *H. A. O'Neal,* for appellants, cited: Pepper *v.* Smith, 54 Tex., 115; White *v.* Shepperd, 16 Tex., 172; Clements *v.* Lacy, 51 Tex., 160; Flanagan *v.* Pearson, 50 Tex., 383; Johnson *v.* Newman, 43 Tex., 642; Sayles' Pl. & Pr., secs. 689, 726–730, 752; R. S., arts. 1335, 1339, 1421.

*O'Neal & Son,* for appellee, cited: Perkins *v.* Miller & Sayers, 1 Tex. Law Rev., 397; R. S., arts. 4036, 4037.

STAYTON, ASSOCIATE JUSTICE.— This suit was brought by the appellant against the appellee and her husband, John Griffin, to recover about one hundred and twenty-five acres of land which was formerly Cass county school land, and by supplemental petition he sought to recover the purchase money which he had paid.

It appears that in 1866 the appellee, she then being a widow with children, settled upon the land in controversy, buying a small improvement then on the land, knowing that it was school land belonging to Cass county, and intending to buy it when it should be placed upon the market.

In 1872 the appellee married her co-defendant, John Griffin, who lived with her upon the land until some time in the year 1880, when he abandoned her, since which she and her children have continuously resided upon the land, having no other home.

In 1877 John Griffin bought the land from Cass county and made a payment, at the time of the purchase, of one-eighth of the purchase money, and gave to the county his obligation to pay the residue of the purchase money, which amounted to $109.82, and received a certificate of purchase. The purchase money unpaid was to be paid in eight annual instalments, of which John Griffin paid those falling due for the years 1878, 1879 and 1880, and the obligation executed by Griffin as well as the certificate of purchase provided that, upon failure to pay any instalment when due, the entire purchase money should be payable.

Griffin abandoned his wife and transferred the certificate of purchase to appellant, for which he paid to him $100, and assumed the payment to Cass county of the balance of purchase money due.

In November, 1880, the appellant presented the certificate of purchase given by Cass county to the proper officers of the county, paid the purchase money due and received a deed to himself for the land, and upon that he relies for title. It does not appear that Griffin ever, in any manner, contributed to the support of the family or the appellee after he abandoned them, nor that he ever acquired another homestead. The appellee tendered to the county the amount due for the year 1881, and it was refused for the reason that the appellant had then paid all the purchase money due.

The cause was tried by the court and a judgment rendered for the defendant for the land, but directing that the appellee pay into court for the appellant, by the February term thereof for the year 1884, the sum which appellant had paid on the purchase money, with interest from the time of such payment. The judgment also provided that, in the event of the failure of appellee to pay the money as directed, the land should be held subject to satisfy the amount so paid, but there was no formal order such as is usual in the foreclosure of liens.

The proposition under the first assignment of errors gives the substance of that assignment, and is: "The homestead right is dependent upon the legal title to the land, which must be in either the husband or the wife, or both. It does not vest, and cannot be set up, against a vendor or his assignee until the purchase money is paid."

The second assignment of error is: "The court erred in holding that the defendant Fanny Griffin has a homestead right in the land here in controversy, and that her signature and separate acknowledgment are necessary to give validity to the transfer from John Griffin to plaintiff of the certificate of purchase issued to said John Griffin by E. Croft, the county judge."

These assignments will be considered together.

There is nothing in the constitution or laws of this state which prevents the homestead right of the wife from attaching to any interest in land which may be owned by the husband or wife, or by the community, and be used as homestead; and the great current of authority is to the effect that the homestead right will attach to an equitable estate, an estate for life, or even to a leasehold interest. The authorities bearing upon this question are given in sections 170, 171, 172, 174 and 176 of Thompson on Homesteads; and these

authorities and the reasons given therein are deemed conclusive of this question.

It follows that when the homestead right has attached, however feeble may be the estate to which it attaches, it can only be divested, so long as it is not in some way abandoned, by a conveyance made by the husband and wife in the manner prescribed by law.

In the case of Wilder v. Haughey and wife, 21 Minn., 101, it appeared that Haughey had purchased of the state a quarter-section of school land, on which he had paid fifteen per cent. of the purchase money and some interest subsequently falling due, upon the residue of the purchase money, and that he had received the usual certificate of purchase, and had entered into the possession of the land, using it as a home for his family. He also paid the annual interest on the residue of the purchase money up to June 1, 1868. On June 7, 1867, he assigned the certificate of purchase to Wilder & Co. as security for a debt, and failing to pay the same, a suit was brought to foreclose the mortgage created by the assignment of the certificate of purchase, and it was held that Haughey had such an estate in the land as would sustain the homestead claim, and that the assignment, in way of mortgage, made without the consent of the wife, could not be enforced.

The same ruling was made by the same court, under similar facts, in the case of Hartman v. Munch, 21 Minn., 107.

In the case of Stinson v. Richardson, 44 Iowa, 373, it appeared that Stinson, being a married man, purchased land and paid a part of the purchase money, and took a bond for title. He afterwards, with his wife, resided upon the land, and while so residing sold the land to Richardson, who, among other things, agreed to pay the balance of the purchase money. The wife of Stinson brought suit to set aside the sale upon the ground that she had not joined in the conveyance, and her action was sustained. The right of a husband, in good faith, to adjust equities existing prior to the attaching of the homestead right has been recognized in a number of cases in this court. White v. Shepperd, 16 Tex., 163; Clements v. Lacy, 51 Tex., 150; Gillum v. Collier et al., 53 Tex., 592.

This case, however, does not come within the rule recognized in those cases. No part of the purchase money was due at the time the certificate of purchase was assigned, and all of it will not be due until January, 1885. The transfer does not seem to have been made to recover the balance of the purchase money that would fall due by an equitable adjustment with the vendor, nor with any other person then having any interest either in the land or in the

purchase money to become due; but it clearly appears to have been the intention of the husband of the appellee to sell the property and of the appellant to buy it, and thereby divest the homestead right of the wife, without her consent, and, so far as the record shows, without any necessity whatever for such sale; and this occurred after John Griffin had abandoned his wife, and thus had indicated an intention no longer to regard the marital rights of the wife or his own duties. At the very time the appellant purchased he seems to have been informed by the husband of some disagreement between him and the wife, and he was affected with notice that the property was homestead by its actual occupancy by the appellee and her children. Under such facts the court below very properly held that the rule invoked had no application.

Nor do the facts of this case bring it within the rule that as against a vendor of land a homestead right cannot be set up to defeat the recovery of unpaid purchase money. That rule is intended and operates solely for the benefit of the vendor who holds a lien, in the nature of things older than any homestead right in the vendee can be, or for some person who, by assignment or otherwise, becomes legally entitled to enforce such lien; but as against all other persons having no lien prior to the vesting of the homestead right, it is wholly unimportant whether the land has been paid for or not.

It has been held by this court that a vendor who had made an executory contract to convey land upon payment of the purchase money might, in default of payment, annul the executory contract and sell to another and thus pass good title. Howard v. Davis, 6 Tex., 182. From this rule, however, the appellant cannot receive any benefit; for the right of Cass county to disregard its contract to sell, and to resell to some other person, depended upon whether or not, at the time Cass county made the conveyance to the appellant, Griffin was in default in his payments. He is shown not to have been so, and with that fact falls all claim to *title* in the appellant save a mere legal title which he held in trust for those who had the equitable right to the land upon payment of the purchase money.

Whatever rights the appellant has, and he certainly has none to the land, he must take by subrogation. The court below held that he was entitled to recover the purchase money which he had voluntarily paid, with interest upon it from time of payment, and that the appellee pay the same into court by the February term, 1884. There is no error in this, raised by the assignment of error, of which the appellant can complain. The appellee has not assigned error; hence it becomes unnecessary to consider whether or not, under the facts of

the case, the appellant was entitled to be subrogated to the rights which Cass county once held, but which he had voluntarily destroyed by paying the debt which alone gave existence to the right, and this in the face of the fact that he must have known that the contract which he was making with the husband was illegal.

This court has gone very far in subrogating parties to the rights which others have held, in order to do what seemed substantial justice. Whether it could be done in a case like this may be questioned. That the appellant was not entitled to recover the money which he had paid to Griffin from the appellee, nor to make it a charge upon the land, is evident.

The decree entered is not as full as are decrees usually in establishing and foreclosing liens, but it establishes the fact that the land is subject to sale for the payment of a certain sum of money; and whether the clerk would be authorized to issue an order of sale upon the non-payment of the money in accordance with the decree or not, the district court would have full power hereafter to direct such process as may become necessary; and this is perhaps the better practice in cases where the process is to issue upon the happening of a given event, of which the court could make inquiry, and then direct the process to issue or not as the facts might be found.

The action was brought originally to recover the land, and it was only by a supplemental petition that prayer for the recovery of the sum paid on the purchase money was made. Judgment was rendered for the appellee for the land, which was the main matter of contest in the case, and also against the claim of the appellant to have repaid to him the money which he had paid to Griffin, and only in favor of the appellant for such sum as he had paid on the purchase money to Cass county. In such case it could not be said that the appellant was the successful party, and therefore, under the statute, entitled to the costs. It was only a partial recovery, and in such case the statute (R. S., 1421) was most probably not intended to furnish the rule. Cannon v. Hemphill, 7 Tex., 207; Walling v. Kinnard, 10 Tex., 512; Latham v. Taylor, 15 Tex., 249. Under the facts the imposition of costs upon the appellant was not inequitable, and the ruling of the court in this respect will not be disturbed.

AFFIRMED.

[Opinion delivered October 23, 1883.]