INVESTORS' MORTGAGE SECURITY COMPANY, LIMITED, ET AL. v. B. F.
LOYD AND WIFE.

No. 901.

**Homestead—Husband's Adjustment of Liens—Joinder of Wife.**

Where a valid lien exists upon the homestead, the husband has the right to convey the property in settlement of such claim, or to adjust it as he sees proper, without being joined by his wife in such settlement, provided the transaction is made in good faith to protect the homestead.

ERROR from Dallas. Tried below before Hon. EDWARD GRAY.

*Gano, Gano & Gano,* for plaintiffs in error.—Homestead rights do not attach until the lands have been paid for; and until then the husband may, without the consent of the wife, in relation to such lien incumber the property by mortgage with right of possession to the mortgagee, substitute other obligations, or wholly extinguish the debt by such terms of settlement and adjustment as he sees proper to make. De Bruhl v. Maas, 54 Texas, 464; Clements v. Lacy, 51 Texas, 151; White v. Sheppard, 16 Texas, 172; Farmer v. Simpson, 6 Texas, 304; Mitchell v. Nix, 1 Posey, 127.

*A. M. Thomason,* for defendants in error.

RAINEY, ASSOCIATE JUSTICE.—This was a suit filed in the District Court of Dallas County, Texas, January 26, 1893, by B. F. Loyd and wife, Anna Loyd, against the Investors' Mortgage Security Company, Limited, a private corporation, John F. Elliott, Herbert Price, H. C. Travers and Lena Travers. In their original petition upon which they went to trial, the plaintiffs claimed that B. F. Loyd, on the ―――― day of ――――, 1892, entered into a written contract with one W. H. Gaston for the purchase from the latter of the lot involved in this suit, to-wit, lot 6 in block 1, Exposition Park Addition to the city of Dallas; that shortly afterward he married the plaintiff, Anna Loyd, and with the intention of making same their homestead, expended certain sums of money in improving the land; that one S. Newman agreed to lend B. F. Loyd sufficient money to pay his indebtedness to said Gaston for the lot, to-wit, $550, and with his consent, said Gaston conveyed the land to said Newman, who agreed to hold the lot as security and in trust; that afterward, desiring more money, said Newman advanced him $900 upon said security, making in all $1450; that on March 23, 1893, plaintiff, B. F. Loyd, secured from the Investors' Mortgage Security Co., Limited, through the defendants, Elliott & Price, the money with which to make up the indebtedness to S. Newman; and to secure said company, had, with the consent of Elliott & Price, S. Newman to retain a lien in the deed from himself to Loyd to secure the note for $1450 executed by Loyd, and had Newman to transfer same to said company; that Loyd and his wife also executed a deed of trust upon the lot to John F. Elliott

to better secure said note—same providing for the maturity of the entire debt on default of interest; that later Elliott & Price loaned him $150, to secure which he and his wife conveyed the lot to said Elliott & Price, but that said deed was intended merely as a mortgage, and that the latter, by deed in collusion with H. C. Travers and wife, conveyed to them said lot; that plaintiffs had no other homestead, and had always intended since their marriage to occupy the premises as their homestead—all of which facts were known to the defendants at the times of their various transactions described. In consequence of which they ask that the trustee and company be restrained from foreclosing the deed of trust; that if any part of the debt be declared a lien, they have the privilege of paying the same off; that the deeds to Elliott & Price and H. C. Travers be declared void; that they have writ of possession, etc.

The defendants, Investors' Mortgage Security Co., Lim., John F. Elliott and Herbert Price, in their first amended original answer, filed October 20, 1893, in addition to the general demurrer, general denial, plea of not guilty, and plea of waiver and abandonment of said contract, if any ever existed, alleged by way of special answer and cross bill, that on February 4, 1893, W. H. Gaston by warranty deed duly filed for record in Dallas County, Texas, on the same day, conveyed to S. Newman the lot in controversy; that Newman paid in the construction of a house on the property $719, and became liable to pay therefor the further sum of $150 to one C. H. Boyce, the contractor; that March 23, 1893, said S. Newman and wife conveyed said property, viz., lot and improvements, to B. F. Loyd, who in payment of part of the purchase money therefor executed his note, payable one year after date, with interest at 10 per cent per annum, payable semi-annually, and 10 per cent attorney's fees, etc., for $1450, to secure payment of which a vendor's lien was retained in the deed of conveyance; that said deed was duly filed for record in Dallas County, Texas, on March 29, 1893; that at the time of the execution of the note a deed of trust was also executed to John F. Elliott, trustee, to secure same, which was also duly recorded in said Dallas County, in which it was provided that upon failure to pay any installment of interest, the holder could declare same due and proceed to foreclose; that said S. Newman indorsed said note before maturity and for a valuable consideration to defendant, Investors' Mortgage Security Co., Lim.; that said company paid therefor its full face value at the time of said indorsement; that said transaction was had in the utmost good faith, and without any knowledge on the part of the said company or its agents of any of the alleged rights of the plaintiffs to this suit; that afterward, the defendants, John F. Elliott and Herbert Price (for said company), were forced to and did pay to one C. H. Boyce in cash the sum of $150, to secure which said Boyce held a mechanic's lien on the property, and took from said Boyce a transfer of his claim and of said mechanic's lien; that in further consideration thereof and in order to prevent the sale by said Boyce of the property, plaintiffs, B. F. Loyd and wife, on April 22, 1893, conveyed said property, subject to said vendor's

lien for $1450, to John F. Elliott and Herbert Price, with the agreement that the plaintiffs should have the right within a certain time to repurchase; that upon their failure to do this, said John F. Elliott and Herbert Price, on July 22, 1893, conveyed said property to said defendant II. C. Travers, who in part consideration therefor assumed said indebtedness of $1450; that default had been made in the payment of interest, the entire note declared due by the Investors' Mortgage Security Co., Lim., placed in the hands of an attorney for collection, etc.

Said defendants asked that plaintiffs take nothing by their suit; that defendant, Investors' Mortgage Security Co., Lim., have judgment for its debts of $1450, interest, attorney's fees, and foreclosure of vendor's lien for said amount on said property; for judgment for said $150, interest and foreclosure of said mechanic's lien for said sum, for costs of suit, all general and special relief, etc.

Defendants, H. C. Travers and wife, in their original answer filed October 27, 1893, besides the general demurrer, general denial and plea of not guilty, and adopting the special answer of the other defendants above given, alleged that they were purchasers under the deed of July 22, 1893, for value and in good faith, without any notice whatever of the pretended claims of the plaintiffs, who were not then and who never had been in actual possession of the property, and asked judgment for all relief to which they might be entitled, etc.

The cause was tried October 28, 1893, without a jury, and judgment rendered in favor of the plaintiffs for the land involved, declaring the same plaintiffs' homestead, and cancelling the lien thereon for all of the $1450 claim except $550, with interest and attorney's fees on same, and cancelling the two deeds of March 23, and July 22, 1893; for the Investors' Mortgage Security Company, Limited, against B. F. Loyd for $1450, interest and attorney's fees, and for foreclosure of the vendor's lien on the land involved for $550 of the amount, with interest and attorney's fees thereon; and refusing the foreclosure of the mechanic's lien on the land, etc.

The defendants, Investors' Mortgage Security Co., Lim., John F. Elliott and Herbert Price, bring the case to this court by writ of error.

The foregoing statement is taken from the brief of plaintiffs in error, which is conceded to be correct by defendants in error.

The complaint of plaintiffs in error is, the failure of the court to foreclose the lien on the land for the full amount of the indebtedness due by Loyd. The court below in failing to do this, evidently concluded that the land in controversy was the homestead of Loyd and wife, and that at the time the liens were claimed to have attached to the property, Loyd alone could not legally create a lien on the land, as his wife was not a party to the contract made by him. The testimony shows that on September 13, 1892, Loyd entered into a written contract with W. H. Gaston for said land, which agreement is as follows:

"State of Texas, County of Dallas. Know all men by these presents, that this agreement between W. H. Gaston, party of the first part, and B. F. Loyd, party of the second part, both of the county and State aforesaid, witnesseth: That the party of the first part, W. H. Gaston, for and in consideration of the sum of six hundred dollars paid by said B. F. Loyd, as follows, two hundred dollars to be paid in twelve months from this date, two hundred dollars within twenty-four months, and two hundred dollars to be paid within thirty-six months, with ten per cent. interest from date, has agreed and binds himself to execute and deliver to the said party of the second part a good, legal and valid warranty deed of conveyance to the following real estate situated in Dallas County, Texas, and known as lot No. 6 in block No. 1, in Exposition Park Addition to the city of Dallas, being fifty feet fronting on Exposition avenue; provided said B. F. Loyd, party of the second part, shall erect a dwelling house on said lot to cost not less than one thousand dollars within the next ninety days from this date.

"Witness our hands, this the 13th day of September, 1892.

"W. H. GASTON,

"B. F. LOYD."

A few days after said contract was entered into, to-wit, September 19, 1892, Loyd entered into a contract with C. H. Boyce to build a house on said land, as per plans and specifications furnished, for $875, Loyd to furnish the lumber. Boyce commenced work on the house about October 5, 1892. On October 13th, Loyd failed in business, and stopped Boyce from work, telling him he did not know whether he would be able to complete the house or not. Loyd then paid Boyce the amount for the work he had already done, which amounted to $30. On October 25th Loyd married. Subsequently, in December, Loyd again got Boyce to go to work on the house, telling him he had made arrangements for the balance of the material to finish the house with. In January following, finding he was unable to complete the house, Loyd applied to Dr. S. Newman for money with which to finish the house, stating that he had made arrangements with Gaston to purchase a lot, that he could not comply with the terms of the purchase, that he could neither pay the money he was to pay, nor complete the house he was to build; that he had commenced to build the house, but was unable to proceed further, and if Newman would lend him the money with which to pay for the land and build the house, he should take a mortgage on the property to secure him in such indebtedness. Newman refused to lend the money on these terms; but did agree to buy the place from Gaston, assume the contracts made by Loyd for building the house, and then, if Boyd desired, he would sell the property to him for a reasonable profit over and above the sum paid to Gaston and the cost of finishing the house. Loyd agreed to this arrangement; Gaston conveyed the property to Newman by deed duly executed, and Newman assumed the contracts made by Loyd and paid the amounts due thereon, which amounted to $750. Afterward Newman sold the house to Loyd

for $1500, and Newman and wife executed a deed to Loyd, the consideration recited being $4000,—$2500 cash, and a note executed by Loyd for $1450, with interest and attorney's fees, to secure the payment of which note a vendor's lien was reserved in the deed, and to further secure it, B. F. Loyd and wife, Anna Loyd, executed to John F. Elliott, trustee, a deed to the land in controversy, describing the note as a vendor's lien note on the land, authorizing the trustee to sell in case of default. After this deed was executed, Boyce presented a claim to Newman for $150, which was still due on his contract and which was secured by a mechanic's lien on the property, and which claim Newman refused to pay, as he did not know that this amount was still due and owing to Boyce when he deeded the land to Loyd. The claim, however, was taken up by Elliott & Price, and to secure the same to them a deed to the land was executed by B. F. Loyd and wife, in which the consideration was acknowledged to be $1605,—$155 cash, and the assumption by said Elliott & Price of the payment of the $1450 note executed by Loyd to Newman. At the time of the execution of this deed it was agreed between the parties that Loyd should have the right to repurchase the property within sixty days, and if he failed to do so, the same should be sold to pay said note and the said amount of $150 due Elliott & Price.

At the time Loyd bought or contracted for the lot, he intended for it to be his homestead, as he then expected to get married. No contract was made or entered into by his wife further than the execution of the deed of trust and the deed heretofore mentioned. Loyd never occupied the premises as a home; the house was completed about March 1, 1893, and no steps were taken by Loyd to occupy it for about two months. When the land was deeded to Travers and wife by Elliott & Price, they then took possession, and were holding such possession when this suit was brought. Travers paid to Elliott & Price $260 cash as part consideration for said land.

It is well settled in this State, that where a lien exists upon the homestead, the husband has the right to convey the homestead in settlement of that claim, or to adjust it as he sees proper, without being joined by his wife in such settlement, provided the transaction is made in good faith to protect the homestead.

In the case of Clements v. Lacy, 51 Texas, 160, Justice Bonner, in discussing the limitations of the powers of the husband to dispose of the homestead without the consent of the wife, quotes with approval the language of Chief Justice Hemphill in White v. Shepperd, 16 Texas, 172, as follows: "This restriction applies where the husband has acquired full property in the land, and not when it is charged with preceding equities or incumbrances. These must be discharged, and they have preference over the rights of the homestead privilege, and the right of the husband to make arrangements in violation of these incumbrances or to renounce lands thus burdened or subject to conditions and contingencies, could not be questioned by the wife in virtue

of her remote right which might arise if the incumbrance or conditions were ever discharged or removed, unless in cases where the husband is squandering the property with the fraudulent design of depriving the wife of a homestead." This doctrine has been recognized as the law of this State ever since. Hicks v. Morris, 57 Texas, 658; Whatley v. Griffen, 60 Texas, 212.

By the transaction with Newman, Loyd was evidently trying to secure a homestead free of incumbrances, instead of attempting to dispose of it with a fraudulent design to deprive his wife of her rights therein. By the written contract Gaston was to sell the land to Loyd on a credit; one of the conditions being, however, that Loyd was to place improvements thereon within ninety days from date of contract, of the value of one thousand dollars. This was a condition precedent that Loyd had to comply with before he could require a conveyance upon the terms therein contained; and in order to secure the conveyance to him he had the power, independent of his wife, to make any contract in relation thereto necessary to accomplish that end. The contract with Boyce to build the house on the land was necessary, and Boyce had the right to fix the lien on the property superior to any homestead right Loyd and his wife had therein; and Newman having paid Boyce the debt due him, at the request of Loyd, Newman was thereby subrogated to all the rights of Boyce in the premises.

If it be conceded, as contended by appellees, that the deed from Gaston to Newman had only the force and effect of a mortgage, still we are of the opinion that said land is subject to the payment of the $1450 note. It is apparent from the record that Loyd was unable to meet the requirements of his contract with Gaston, and in order to secure the land and prevent the loss to himself of the improvements that had been placed thereon, he induced Newman to pay the larger part of his indebtedness to Boyce for building the house and his indebtedness to Gaston for the land, and consented that Gaston might deed the land to Newman—the understanding being that Newman should be reimbursed for his outlay. Under these circumstances, Loyd had the power to bind the land for all the money paid by Newman. To hold that Newman could be deprived of the legal title to the same without requiring payment of the money advanced by him would, in our opinion, be doing violence to both law and equity.

By the transfer of the note the appellant, Investors' Mortgage Security Co., Limited, became entitled to all the rights possessed by Newman therein, and the court erred in not foreclosing the lien for the full amount of the $1450 note according to its terms.

The contention of appellants, Elliott & Price, that a lien for the $150 paid by them to Boyce should have been foreclosed by the court below, is not well founded. The evidence shows that they deeded the land to Travers, receiving as a part of the consideration therefor the sum of $260 cash. Treating the deed from Loyd and wife to them as a mortgage, which we think it was, the same was foreclosed by them

when they sold to Travers, and the cash payment received by them is sufficient to reimburse them for the money they expended.

Travers and wife have abandoned their appeal and have agreed that the same be dismissed as to them, and it is so ordered.

The judgment of the court below is reversed, and judgment here rendered for plaintiff in error, Investors' Mortgage Security Company, Limited, for the amount of the note executed by Loyd to Newman according to the terms thereof, with a foreclosure of the lien upon said land.

*Reversed and rendered.*