WALLS et al. v. CRUSE et al. (No. 83.)

(Court of Civil Appeals of Texas. Beaumont. March 23, 1916.)

1. VENDOR AND PURCHASER &#x229E;93 — RESCISSION BY VENDOR.

The vendor on failure of the purchaser to carry out the contract by making payments may rescind it, and sell the land, and pass title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 153, 154; Dec. Dig. &#x229E;93.]

2. VENDOR AND PURCHASER &#x229E;99 — RESCISSION BY VENDOR—LOSS OF RIGHT—TRANSFER OF NOTE.

Right of the vendor to rescind ceases on his sale of the vendor's lien note.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 167–169; Dec. Dig. &#x229E;99.]

3. VENDOR AND PURCHASER &#x229E;89 — RESCISSION BY BUYER OF VENDOR'S LIEN NOTE.

The right to rescind a contract of sale of land for default of the purchaser in payments passes to the buyer of the vendor's lien note.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 148, 149, 151, 156; Dec. Dig. &#x229E;89.]

4. VENDOR AND PURCHASER &#x229E;97, 100 — RESCISSION BY VENDOR—CONDITIONS.

That a vendor or one succeeding to his rights may rescind for nonpayment of purchase money, he must insist on payment, and not wait too long.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 161, 162, 166, 170; Dec. Dig. &#x229E;97, 100.]

5. VENDOR AND PURCHASER &#x229E;98 — RESCISSION BY VENDOR—CONDITIONS.

For the vendor or one succeeding to his rights to rescind for nonpayment of vendor's lien note, after waiting over 20 years, he must pay back, with interest, the cash payment made.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 163–165; Dec. Dig. &#x229E;98.]

6. VENDOR AND PURCHASER &#x229E;172 — ABANDONMENT OF CONTRACT — PERFECTING OF TITLE BY PURCHASER.

For the purchaser or his heirs, after apparently abandoning the contract for many years, to perfect title, they must pay the amount of the unpaid vendor's lien note, with interest and all expenses, including taxes, incurred in protecting title, by the successor to the vendor's rights.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 349–351; Dec. Dig. &#x229E;172.]

Appeal from District Court, Tyler County; A. E. Davis, Judge.

Action by Mary S. Walls and others against R. A. Cruse and others. From an adverse judgment, plaintiffs appeal. Reversed and remanded for new trial.

V. A. Collins, of Beaumont, and Thomas & Wheat, of Woodville, for appellants. Mooney & Shivers, of Woodville, for appellees.

MIDDLEBROOK, J. This suit was filed by Maggie Walls and others, as heirs of Thomas Walls, deceased, on the 22d day of July, 1913, in the district court of Tyler county, Tex., against R. A. Cruse and the Steger Lumber Company for the recovery of 100 acres, a part of the Robert Lucas league of land in Tyler county, Tex. Maggie Walls is a feme sole, and the suit is in the usual form of trespass to try title.

Defendants answered jointly on February 1, 1915, by general demurrer, general denial, plea of not guilty, and plead specially that Mary S. Cobb sold 100 acres of land to Thomas Walls, and retained a vendor's lien on said land, June 9, 1883, to secure the purchase money, and that Mary S. Cobb transferred said note to R. A. Cruse; that Walls moved on and took possession of the land, and that he (Cruse) furnished Walls with groceries and merchandise; that Walls failed to pay the account and the vendor's lien note and left the country, and Cruse knew not of his whereabouts, and failed to find his residence, and in order to protect his note, and to prevent his indorser, Mary S. Cobb, from avoiding payment thereof, he filed suit in Tyler county, Tex., "on the —— day of ——, 18—," against Walls, as maker, and Mary S. Cobb, as indorser asking judgment and foreclosure on said note, which suit was carried for many years on the docket of said court, and finally dismissed by the court at the cost of plaintiff Cruse, with judgment for costs against Cruse; and that Mary S. Cobb conveyed the land to R. A. Cruse to rescind the contract of sale between her and Walls, conditioned that Cruse would release

her from obligation on the vendor's lien note, which she had theretofore transferred and indorsed to Cruse.

The case was tried before the court without a jury, and judgment was rendered in favor of Cruse for the land, and for $111 in money, being the amount Cruse had received for the timber on said land from the defendant Steger Lumber Company.

Briefly stated, the facts are:

Mary S. Cobb sold Thomas Walls 100 acres of land by deed dated June 9, 1883, for $250, $125 cash, and one vendor's lien note for $125 payable to Mary S. Cobb or bearer, with 7 per cent. per annum interest after maturity. The vendor's lien is retained in the note and in the deed. The note was transferred to R. A. Cruse, and its payment guaranteed by Mary S. Cobb before its maturity.

Walls was a section foreman on the railroad, and the testimony shows that he cleared up a part of the land with section hands, and put it into cultivation; but it does not show how long he used and cultivated the land. . He was discharged by the railroad company, and after his discharge moved onto the land and occupied it a ,while, and moved off and went to work on Houston East & West Texas Railroad. He moved from that work, and after this his whereabouts seem to be unknown, so far as the record discloses. Before Walls left the country, however, Cruse tried to collect the note, but failed. Cruse furnished him supplies while he was living near Woodville, and Walls was unable to pay for same, and gave Cruse the following note in settlement of his account with Cruse:

"$318.22    Woodville, Tyler Co., Texas,
                                "March 28, 1885.

"One day after date I promise to pay R. A. Cruse or bearer at Woodville, Tyler Co., Texas, three hundred & eighteen & $22/100$ dollars with ten per cent. interest from the first of last January until paid for value received.

                                            his
                            "Thomas X Walls.
                                            mark
"Witness:
    "T. E. Hyde.
    "C. D. Ogden."

' Indorsed on back:

"Thos. Walls $318.22 I acknowledge the within note to be just & correct & unpaid, this the 10th day of June 1889.

                                            his
                            "Thomas X Walls.
                                            mark
"Witness:
    "T. E. Hyde.
    "H. A. Arnold.
    "[Pencil notation:] Can take the land he purchased from Cruse for note."

Walls left no one on the land, nor is there any claim set up to the land by Walls or his heirs until the filing of the present suit. Cruse had always claimed the land since Walls left the country, and paid back taxes on it, and has also paid the taxes on the land for about 27 years, up to the present time. Cruse offered to prove a settlement between himself and Walls; but upon objection the trial court refused to let him do so. Some

time after Walls left the country Cruse brought suit on the vendor's lien note, seeking judgment for his debt and foreclosure of his vendor's lien; Walls and Mary S. Cobb both being made parties to the suit. This suit stood on the docket of the district court for a number of years, Cruse being unable to get personal service on Walls, and the suit was finally dismissed by the court. On the 29th day of July, 1901, A. M. Davis and Mary S. Davis (formerly Mary S. Cobb) executed the following deed to R. A. Cruse:

"The State of Texas, County of ——.

"Know all men by these presents that I, M. S. Davis, formerly M. S. Cobb, joined by my husband, Monroe Davis, of the county of Polk and state aforesaid, for and in consideration of the sum of five dollars to us in hand paid by R. A. Cruse, and the further consideration of the sum of $—— heretofore paid by said R. A. Cruse, and for the purpose of ratifying and confirming a deed to the hereinafter described land, heretofore made by me to the said R. A. Cruse, which said deed is alleged to have been lost or destroyed, have granted, sold, and conveyed, and by these presents do grant, sell, and convey, unto the said R. A. Cruse, of the county of Tyler and state of Texas, all that certain tract, piece, or parcel of land lying and being situated in Tyler county, Texas, and being a part of the league of land originally granted to Robert Lucas and described by metes and bounds as follows: [Then follows description.]

"To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said R. A. Cruse, heirs and assigns, forever. And we do hereby bind ourselves, our heirs, executors, and administrators, to warrant and forever defend, all and singular, the said premises, unto the said R. A. Cruse, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness our hands at —— this 29 day of July, A. D. 1901.

"Signed and delivered in presence of
                            "A. M. Davis.
                                    her
                    "M. S. X Davis.
                                    mark
"————.
"————."

"The State of Texas, County of Polk.

"Before me, S. M. Oates, J. P. and ex officio notary public in and for Polk county, Texas, on this day personally appeared Monroe Davis, and M. S. Davis, wife of the said Monroe Davis, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed, and the said M. S. Davis, wife of the said Monroe Davis, having been examined by me privily and apart from her husband, and having the same by me fully explained to her, she, the said M. S. Davis, acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she wished not to retract it.

"Given under my hand and seal of office this 29th day of July, A. D. 1901. S. M. Oates, J. P. and Ex Officio Notary Public in and for Polk County, Texas."

The following deed was also executed by A. M. Davis and his wife, M. S. Davis (formerly M. S. Cobb):

"State of Texas, Tyler County.

"Whereas, heretofore, on, to wit, the 9th day of June, 1883, I, Mary S. Davis, then Mary S.

Cobb, did by my certain two deeds in writing of that date conditionally sell and convey unto Thomas Baker and Thomas Walls each one hundred (100) acres of the hereinafter described tract of land and retained in each of said deeds a vendor's lien on the land so conditionally sold and conveyed to secure the payment of two purchase-money notes for one hundred and twenty-five ($125.00) dollars each, due Jan. 1st, 1884, given by the said Thomas Baker and Thomas Walls, thereby retaining the superior legal title to each tract of said land so conveyed in myself until said purchase-money notes are fully paid according to their face, tenor, and effect, which said deed to Thomas Baker is recorded in Book L, page 582, Deed Records of Tyler County, and the said deed to Thomas Walls is recorded in Book L, page 587, Deed Records of Tyler County, and both of said deeds, together with the record thereof, are hereby referred to and made a part hereof; and whereas, the said notes have been due for more than twenty (20) years, and are wholly unpaid, and the said Walls and Baker have long since abandoned the country and all claim to said land, and have refused to carry out the contract in said deeds by paying the purchase-money notes, and I have long since rescinded said contract or conditional conveyances:

"Now, therefore, know all men by these presents that we, Mary S. Davis (née Cobb), joined by her husband, Monroe Davis, of the county of Polk and state of Texas, have rescinded and do by these presents rescind in toto the said above-mentioned conditional conveyances, and for and in consideration of the sum of five hundred ($500.00) dollars to us in hand paid by R. A. Cruse, the receipt of which is hereby acknowledged, have bargained, sold, and conveyed, and by these presents do bargain, sell, and convey, unto the said R. A. Cruse, of the county of Tyler and state of Texas, the following described tract or parcel of land, lying and being situated in Tyler county, Texas, about six (6) miles north of the town of Woodville, and being a part of the league of land originally granted unto Robert Lucas, bounded as follows: [Follows description.]

"To have and to hold the above-described premises unto the said R. A. Cruse, his heirs and assigns, forever.                    Monroe Davis.
                                   "Mar. S. Davis.

"State of Texas, Polk County. .

"Before me, the undersigned authority, on this day personally appeared Monroe Davis and his wife, Mary S. Davis, known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged to me .that they executed the same for the purposes and consideration therein expressed; and the said Mary S. Davis, having been examined by me separately and apart from her said husband, and after having the same by me fully explained to her, acknowledged to me that said instrument was her act and deed, and that she had willingly executed the same for the purposes and consideration therein expressed, and wished not to retract it.

"Given under my hand and seal of office this 27th day of Jany., 1908.
     "[Seal.]                      J. G. Moss,
          "Notary Public, Polk Co., Tex."

This deed is not dated, but the notary took the acknowledgment January 27, 1908, and the deed was recorded February 3, 1908.

Cruse testified that he released Mrs. Davis from the note when she deeded him the land, but the release was verbal. The land was worth about $300 when Walls left it. Cruse sent his clerk to Walls to collect the $318 note, but he did not collect it, and when he returned from seeing Walls the pencil memorandum "can take the land he purchased from Cruse for the note" was on the back of the note, and was not there before that time. The deed from A. M. Davis and M. S. Davis was made several years after Walls left the country, and after the suit was filed by Cruse against Walls and Cobb, and Mr. Cruse testified:

"I think it was the last deed made to me in consideration of my dismissing the suit against her."

At the time Cruse sent his clerk to Walls to collect the note it was not out of date. When he got that note back he rested satisfied from then on, because he was satisfied that Mr. Walls meant for him to take the land for the note and the other obligation; that all aggregated more than $300; the note is more than $300 for the indebtedness; that he has never since undertaken to collect that debt, because he was satisfied that he would get the land; that he relied on the representation on the back of that note; that the value of the land at that time ranged from $1 to $3 an acre; he thought $3 would be a good average price for the land, and that would not have paid the debt; that since that time he has never made any effort to collect that debt, and undertook to take the land. Cruse always exercised authority and control over the land after Walls left, but never went into actual possession of it. The plaintiffs are the admitted heirs of Thomas Walls.

It was agreed by the parties that the winner of the suit was the owner of the $111 on deposit for the timber cut from the land, and by former agreement the money for the timber cut from the land was placed upon deposit, subject to the order of the winner of the suit, and that .agreement was in . writing. The Steger Lumber Company bought the timber; hence its connection with the suit.

Appellants have assigned six errors, which are substantially:

(1) That the court erred in rendering judgment for defendant because no proper demand was made for payment, and no notice of the rescission of the executory contract by Cruse to plaintiffs.

(2) That, Cruse having treated the contract as continuing until just before the trial, and not having given notice of the rescission of same, the judgment is contrary to the law.

(3) That Cruse having filed suit to foreclose on the vendor's lien note, and, having dismissed the same, he was estopped after recognizing the contract as a continuing one, to go back of his acts, and claim the land under a rescission of the original contract.

(4) Because defendant Cruse could not rescind the contract until Mary Davis and her husband, Monroe Davis, gave him a written assignment of their legal title; no rescission could therefore have been made by him, and, no notice of rescission by Cruse after

acquiring the land title from Davis and wife, the plaintiff should have recovered.

(5) Because no notice to plaintiffs was given by Mary S. Cobb or her husband, Monroe Davis, of a rescission of the contract, before the sale to R. A. Cruse of their title to the land, or assignment of their lien, and therefore R. A. Cruse could not make any legal rescission of the contract.

(6) That the trial court erred in admitting in evidence, over plaintiffs' objection, the $318 note.

These are answered by appellees by counter proposition, as follows:

"In order for appellants to recover under their equitable plea, they must not only tender defendants the principal and interest on the note, also all taxes, together with legal interest thereon, and all other proper and necessary charges paid by defendants."

After careful consideration of the case we have decided that neither the plaintiffs nor the defendant Cruse have met the requirements of an equitable proceeding, involving issue under the facts of this case.

[1-4] That Mr. Cruse had the right to rescind the contract upon failure of Walls to carry out his part of it has been recognized for many years by the courts of our state. So, too, has the vendor the right, on default of payment of the purchase money, to sell the land and pass the title to it. Estes v. Browning, 11 Tex. 247, 60 Am. Dec. 238; Secrest v. Jones, 21 Tex. 121; Scarborough v. Arrant, 25 Tex. 129; Tom et al. v. Wollhoefer, 61 Tex. 277.

"To avail himself of this equitable right, he must not delay too long in insisting upon payment of the money. He must not treat the contract as still subsisting, or do any act which may be construed into its affirmance. A transfer of one of the purchase-money notes is held to amount to such an affirmance (Coddington v. Wells, 59 Tex. 49), and so doubtless is a repurchase of the land from the vendee, at least when more is paid than was due upon the original contract. If the vendor goes into equity to set aside the sale, he must tender the purchase money already received, or he will be defeated as not offering to do equity. Thomas v. Beaton, 25 Tex. Supp. 321. The vendee, when sued for the land, may tender the money due, and this will save the forfeiture, no matter how long he may have been in default. Estes v. Browning, supra."

So from these authorities it would seem clear that Miss Cobb's sale of the vendor's lien note to R. A. Cruse would preclude her right to rescind the executory contract, and therefore the deeds she and her husband executed to Cruse after she had sold the $125 note to Cruse could avail nothing as to rescinding the original contract; all of her rights and equities in the matter passed to Cruse when he bought the note; and R. A. Cruse, when he became the owner of the note, had all the legal rights and equities formerly possessed by Miss Cobb, and therefore he had the right to rescind the contract, and claim the land as his own, and sell it, if he desired to do so, and thereby pass the title to it to his vendee. This principle of law is forcefully elucidated and declared in Thompson v. Robinson, 93 Tex. 170, 54 S. W. 243, 77 Am. St. Rep. 843; Rutherford v. Mothershed, 42 Tex. Civ. App. 360, 92 S. W. 1020. See, also, authorities cited in these cases.

So Cruse being the owner and holder of the note, when it became due, had the right to annul the executory contract. But from the authorities already quoted he must insist on payment, and not wait too long after the note becomes due. His undisputed evidence shows that he was insisting upon payment of the note, though the record is silent as to just when the note would become due, and it is also shown that at some time he filed suit on the note, and sought a foreclosure of the vendor's lien. The filing of this suit is a very forceful fact, tending to show that he did not at that time desire to rescind the contract, and take the land back; but this suit was never prosecuted to a judgment, but finally dismissed by the trial court at his cost. It is to be noted also that this suit was filed after he had received the $318 note back with the pencil memorandum upon it before quoted, because he testified that Walls left the country, and he could not get service upon him, and Walls was still here when his clerk went to see him to collect the note, and the merchandise note came back to Cruse with the pencil memorandum upon it. So it is by no means clear just what Mr. Cruse did at the time intend to do. However, he says that after he received the note back in that shape he afterwards considered the land his, and took charge of it, and has since exercised control over it, and has paid the taxes on it.

Cruse was warranted in arriving at a conclusion that Walls had abandoned his contract, since Walls had left the country and for 20-odd years had done nothing toward the land nor in settlement of the purchase-money note, and he had the right "to disaffirm the contract and convey the land if the circumstances would not make it inequitable for him to do so." As is said by Justice Brown in Thompson v. Robinson, 93 Tex. 165, 54 S. W. 245, 77 Am. St. Rep. 843:

"The plaintiffs below being in default of such payment for 15 years, Bonnet, the owner of the superior title and the deed, had the right to disaffirm the contract, and convey the land to B. R. Thompson, if the circumstances would not make it inequitable for him to do so." Howard v. Davis, 6 Tex. 174; Wheatley v. Griffin, 60 Tex. 209; White v. Cole, 87 Tex. 500, 29 S. W. 759.

And upon the death of Walls his heirs had the right to pay to Mr. Cruse the purchase money paid by him for the vendor's lien note, with interest and any other legal expenses accrued thereon and thereby perfect their title. For further authorities pertinent to the issues of this case see Lanier v. Foust, 81 Tex. 186, 16 S. W. 994; Evans v. Bentley,

9 Tex. Civ. App. 112, 29 S. W. 497, 36 S. W. 1070; Evans v. Ashe, 50 Tex. Civ. App. 54, 108 S. W. 398, 1190. See, also, Moore v. Brown, 46 Tex. Civ. App. 523, 103 S. W. 244; Gardner v. Randell, 70 Tex. 457, 7 S. W. 781; Telegraph v. Green, 139 S. W. 912; Moore v. Giesecke, 76 Tex. 551, 13 S. W. 290; Erwin v. Daniels, 34 Tex. Civ. App. 378, 79 S. W. 61; Hill v. Still, 19 Tex. 78; Hamblen v. Faults & Walsh, 70 Tex. 137, 7 S. W. 834.

[5] Under the facts and pleadings of this case and the authorities above cited and quoted from, we are of opinion that, in order for Mr. Cruse to rescind the contract, it is his duty to pay back to the heirs of Walls the cash money he received, with legal interest thereon, the undisputed evidence showing that half of the original purchase money was paid at the time of the execution of the deed to Walls, and the vendor's lien note of Walls to Mary S. Cobb, which he did not propose to do.

[6] We are of opinion also that in order for the heirs of Walls to perfect their title it is necessary, not only for them to pay the amount of the original purchase-money note, but it is their duty to pay all necessary and legal expenses incurred by Cruse in protecting the title to the 100 acres of land, which, of course, would include the taxes he has paid for the last 27 years, together with legal interest thereon. Equity would demand nothing short of this, because, if Cruse had not paid the taxes, the presumption, at least, is that the land would have long since been sold for taxes, and the title passed either to the state or some person bidding it off at a tax sale. "He who seeks equity must do equity." This law axiom is applicable both to the plaintiff and the defendant Cruse in this case.

The record shows that Walls used the land for some time, with his section hands cleared up a field on it, but it does not show how long he used the land, nor does it show rent value of the land during the time he used it, and, while that particular feature is not presented before us, we suggest, in view of another trial of this case, that such is proper for consideration, and, if it is shown that the land had a rent value at the time Walls was using it over and above improvements placed upon the land by him, in such event equity would demand an accounting by the plaintiffs in this case to the defendant for such rents.

The evidence offered by Cruse and rejected by the court as to settlement with Walls, under the facts of this case, and the long duration of time that Walls asserted no claim to the land, should be admitted, so that the jury may have every ray of light possible that might assist in arriving at the rights and equities of the parties.

So believing, the cause is reversed and remanded for another trial.