**TEXAS BITULITHIC CO. v. MOORE et al.**

No. 13472.

Court of Civil Appeals of Texas. Fort
Worth.

Jan. 29, 1937.

Rehearing Denied March 5, 1937.

Goggans & Ritchie and Mart W. Reeves,
all of Dallas, for appellant.

Mathis & Caldwell, of Wichita Falls, for
appellees.

BROWN, Justice.

This suit was brought by appellant, as
a purchaser in due course of a paving lien
on certain improved property in the city of
Wichita Falls.

It appears that one Mrs. Annie E. Ash,
who was the wife of E. N. Ash at the time,
but who was not living with her then hus-
band, bought the property in her name and
was living therein, on March 8, 1926, when
the city of Wichita Falls duly passed an
ordinance, for the purpose of paving the
street in front of the premises.

It further appears that Mrs. Annie E.
Ash, joined by her husband, E. N. Ash, on
April 17, 1926, about 40 days after the
paving ordinance was passed, deeded the
property to C. T. Moore and wife, Grace
Moore, and that on September 16, 1926,
Moore and wife, by written instrument,
duly executed and acknowledged, gave an
express mechanic's lien on the premises to
the paving company which recites: "In
consideration of improvements including
grading, paving, and constructing curbs and
gutters on said premises in said street un-
der the terms of a resolution and ordinance
adopted by the Board of Aldermen and in
accordance with the specifications therefor
prepared by the City Engineer, do promise
to pay to West Texas Construction Com-
pany, or its assigns, at Fort Worth, Texas,
the sum of," naming the amount shown in
the city's assessment.

The assessment certificate is dated May
9, 1927, some fourteen months after the
passage of the paving ordinance, and it
recites that the "improvement has been
completed by said Company in compliance
with the terms of said contract, and was
accepted by said City on the 9th day of May,
1927."

A part of the purchase price, in the sale
to Annie E. Ash, was represented by
vendor's lien notes, which were also secured
by a deed of trust lien, duly executed
by the Ashes. A part of these notes and
the liens were transferred to Mrs. Clemen-
tine Simon, a widow, in 1930.

The Texas Bitulithic Company brought
suit against C. T. Moore and wife, Grace,
and Mrs. Clementine Simon, asking for
judgment against C. T. Moore for its debt
and foreclosure of its lien against the
premises as against the Moores and Mrs.
Simon.

The Moores have not contested the suit,
but Mrs. Simon answered, asserting that
the plaintiff's cause of action is barred by
the two-year statute of limitation; that J.
C. Mytinger and M. D. Walker, about May
16, 1925, conveyed the property in con-
troversy to Mrs. Annie E. Ash, retaining
a vendor's lien for the payment of certain
purchase-money notes, and that Mrs. Ash,
joined by her husband, E. N. Ash, ex-
ecuted and delivered to John W. Thomas,
as trustee, a deed of trust conveying the
premises to such trustee to better secure
the payment of the purchase-money notes;
that on March 1, 1930, Mytinger and
Walker, for a valuable consideration, trans-
ferred and assigned certain of the said
notes to her, and that on July 3, 1934, de-

fault having been made in the payment of the notes, she, having requested the trustee to sell the premises under the authority of the deed of trust, became the purchaser of the premises at such sale, having bid therefor the sum of $800.

She further alleged that when the property was sold to Annie E. Ash, Mrs. Ash was a married woman living with her husband, and the premises in question became the Ashes' homestead and continued to remain such until it was sold by them on April 17, 1926, to C. T. Moore, who was then married and who, with his wife, Grace Moore, immediately moved into same and occupied it as their homestead. That by reason of these alleged facts, the paving certificate and liens sought to be foreclosed against the premises are null and void. That by the trustee's sale, under her prior liens, given to secure the purchase-money note, the voluntary lien executed by Moore and wife, subsequently, was "wiped out," and same is not enforceable.

She further pleaded that the paving company waited an "unreasonable length of time" to lay its paving, which "was not completed and said paving not accepted until May 9, 1927, a period of about fourteen months," and that the assessment certificate cannot be enforced. She prayed that plaintiff's asserted lien be declared null and void and the cloud cast upon her title be removed.

The case being tried to a jury, after the taking of evidence was concluded, the plaintiff moved for a peremptory instruction, which was denied, and six issues were submitted to the jury; the substance thereof and answers thereto being:

(1) Was it the intention of Ash to claim the property as the family homestead, on March 8, 1926? Answer: "Yes." (2) Was it Mrs. Ash's intention to so claim the property, at such time? Answer: "Yes." (3) Did Ash own any other property at that time? Answer: "No." (4) Did Mrs. Ash own any other property at such time? Answer: "No." (5) Did Mrs. Ash use and occupy the property as her homestead, on March 8, 1926? Answer: "Yes." (6) Did Mr. Ash use and occupy the property as his homestead, at such time? Answer: "Yes."

On this verdict the trial court rendered a personal judgment for plaintiff against C. T. Moore, but specifically denied the plaintiff a foreclosure of its asserted liens; declared the same to be null and void and

a cloud on the title and removed the same; ordered Mrs. Simon discharged with her costs, and quieted her title.

To this judgment appellant excepted, filed its motion for a new trial, which was overruled, due exception taken, notice of appeal given, and the cause is before us for review.

It has been shown that Mrs. Simon seeks to avoid recovery by the appellant on these theories: (1) That the premises constituted the homestead of the Ashes when the ordinance, levying the assessment for paving the street in front of the premises, was passed; that when it was sold to the Moores they impressed it with the homestead stamp, and that there never was any valid lien against the premises to secure the paving; but (2) if there were ever any lien given it is inferior to her lien, and furthermore is barred by the statute of limitation of two years (Vernon's Ann. Civ.St. art. 5526).

If appellee had presented the authorities in his brief which he now presents on his motion for rehearing, we would have been spared the writing of a second opinion in this cause.

We withdraw the original opinion and have concluded that the judgment of the trial court should be affirmed.

If the property in question was the homestead of Mrs. Ash, then no lien attached by reason of the assessment and the passage of the ordinance, and the contract lien could not become other than an inferior lien, created by the Moores, which could be and was "wiped out" by the trustee's sale. State Trust Co. v. Morrison et al. (Tex.Com.App.) 282 S.W. 214; followed by Fuller Construction Co. v. Hudson (Tex.Civ.App.) 11 S.W.(2d) 541.

The undisputed facts show that Mr. and Mrs. Ash were not living together as husband and wife, but were not divorced, and no evidence was introduced showing that Mrs. Ash had filed suit for a divorce, when she purchased the property, presumably with her funds and took title in her name.

Likewise the facts show that the Ashes had no homestead when Mrs. Ash purchased the property in her name.

We know of no decision holding that a wife cannot purchase a homestead in her own name and with her funds, whether they be separate funds, or community funds. In the instant case it appears that Mrs. Ash was employed, and that she purchased the

property with her earnings. There was no evidence to the contrary, and such as introduced tends to prove this fact.

There is no proof of what caused the separation, or of what constitutes the grounds for divorce that were urged by Mrs. Ash, when she filed her suit.

We cannot assume that Ash was not free to live in the homestead that his wife purchased, or that his conduct toward Mrs. Ash was such that she feared to live under the same roof with him.

In fact, the evidence shows that, although living apart, after the property was purchased, when Mrs. Ash became very ill and was forced to go to a hospital, Ash paid all such bills, and removed Mrs. Ash from the hospital to the home, where Ash stayed and supported her through her convalescence until she regained her health. After which time he left the home, and after which time a divorce decree was granted in Mr. Ash's favor.

The proof shows that the telephone, gas, water, and electric current bills and accounts were carried in Mr. Ash's name.

We do not believe that Mr. Ash's testimony, to the effect that he had nothing to do with purchasing the premises, that he signed the unpaid purchase-money notes merely as a matter of form, that he had nothing to do with the sale of the property to the Moores, and only signed the deed as a matter of form, and that he never intended to make the property his homestead, can have the effect of denying Mrs. Ash the right to purchase a homestead, while she was married to Ash, and to dedicate it to a homestead use, when he neither owned nor attempted to purchase a home for her.

In Texas, we have been generous enough to say that a homestead may be claimed in community property, leased property, and in either the separate estate of the husband, or the separate estate of the wife.

In Crockett v. Templeton, 65 Tex. 134, our Supreme Court said, in a case where the husband and wife had separated and the property had been divided: "Since the division he has never lived with his wife upon her part of the tract, but he has acquired no other home. Without her consent he can mantle no other habitation with homestead protections."

In Wheatley v. Griffin, 60 Tex. 209, this was said: "There is nothing in the constitution or laws of this state which prevents the homestead right of the wife from attaching to any interest in land which may be owned by the husband or wife, or by the community, and be used as homestead."

We are of opinion that, while the marriage relation existed between the Ashes, Mrs. Ash purchased the property in question and dedicated it to use as a homestead, at a time when Ash had provided no other homestead for her use, and, having reached such conclusion, it follows that the assessment made by the city for paving in front of the property created no lien thereon. It also follows that the statutory lien later created by the Moores, who purchased from the Ashes, cannot take precedence over the vendor's lien created long before the assessment was made.

The inferior, statutory mechanic's lien was "wiped out" by the trustee's sale, had upon default in payment of the vendor's lien notes.

The judgment of the trial court is affirmed.